## McArthur and others *v.* Allen and others.[*]

### (*Circuit Court, S. D. Ohio.* July, 1880.)

**1.** WILLS—OHIO ST. FEB. 18, 1831.—The twentieth section of the act of February 18, 1831, (3 Chase's Ohio St. 1788,) provides: "That if any person interested shall, within two years after probate had, appear, and by bill in chancery contest the validity of the will, an issue shall be made up, whether the writing produced be the last will of the testator or testatrix or not, which shall be tried by a jury, whose verdict shall be final between the parties, as in other cases," etc.

    *a.* PROCEEDING TO SET ASIDE WILL—IN REM.—A proceeding to set aside a will, under this statute, is a proceeding *in rem.*

    *b.* SAME—PARTIES.—In such a proceeding every one interested may become a party to the record, but there are, strictly speaking, no parties. The rights of the parties are not determined. The legal status of the will—whether the instrument is the last will of the testator—is the only question in issue.

[*]Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati Bar.

*c.* SAME—EXECUTORS.—It is not necessary that the executors should be made parties. Their title to the qualified fee they hold in trust for the purposes of the will was held by them *virtute officii*, and upon the acceptance of their resignations their title became *ipso facto* divested and passed to the heirs at law; and this although the will provided that in case of their refusal, death, or resignation, the court should fill the vacancy.

*d.* SAME—ESTOPPEL BY RECORD.—All persons concerned, whether formally before the court as parties or not, are alike concluded by the verdict.

*e.* SAME—SAME—UNBORN DEVISEES.—Devisees under the will not then *in esse*, and of course not parties, are barred as conclusively by such a proceeding as those who are living.

*f.* SAME—BONA FIDE PURCHASERS.—As to the rights of *bona fide* purchasers without notice of any infirmity in such proceeding, *quære*.

2. COLLATERALLY IMPEACHING DECREE SETTING ASIDE WILL.—A decree setting aside a will cannot be impeached collaterally. It must be assailed, if at all, in a proceeding had directly for that purpose.

*Greignon's Lessee* v. *Astor*, 2 How. 319, followed.

In Equity. Final hearing.

The facts appear in the opinion.

*King, Thompson & Maxwell* and *Matthews, Ramsey & Matthews*, for complainants.

*Harrison, Olds & Marsh, H. F. Page, John W. Herron* and *McClintick & Smith*, for respondents.

SWAYNE, C. J. This bill was formerly before us on demurrer.* We then expressed our views as to the will to which it relates, under the laws of Ohio, with respect to the subject of perpetuities. The demurrer was overruled. The case is now before us upon the merits. A brief resume of, the facts disclosed in the record is necessary to render intelligible what we shall have occasion to say in regard to the controversy in this aspect.

Governor Duncan McArthur died on the twelfth of May, 1839. He left a will, which was duly admitted to probate on the sixteenth of that month. By the will his wife, Mary McArthur, was appointed his executrix, and William Key Bond and Presley Morris his executors. The will provided that if either refused to act, or died or resigned, the court of

*June, 1878. See 3 Cincinnati Law Bulletin, 471.

common pleas should fill the vacancy, etc. The powers and duties of the executors are so familiar to those concerned that it is unnecessary here specifically to enumerate them. It is sufficient to say that the lands of the testator in Ross and Pickaway counties, constituting the bulk of the estate, were devised to the executors for the time being, with directions to collect and apply the rents as provided, until his children should all be dead, and the youngest grandchild should have attained to the age of 21 years. The lands in question were thereupon to be conveyed to his then living grandchildren in equal shares *per capita*; but if any grandchild should have died, leaving children, the share of such grandchild was to go to his or her children *per stirpes*. The final provision of the will on this subject is as follows:

"And in such final distribution of my lands it is my direction that deeds of partition shall be made to and in the name of those who shall be thus entitled thereto, and in the name and for the use of no other person whatsoever, *which deeds shall be executed by my executors for the time being;* and to enable my executors the more effectually to execute the powers and duties by this will devolved upon them, and to protect my said children and grandchildren against fraud and imposition, *I hereby devise* to my said executors, and the successors of them, all my said lands so directed to be leased and finally divided as above, *and to their heirs*, in trust, for the uses and purposes and objects expressed in this my will, and the performance of which is herein above directed and prescribed, to have and to hold the title thereof till such final division and partition thereof, and no longer."

Several things are to be observed at this point. The careful hand that drew the will used words of inheritance in defining the estate of the executors. The estate was no larger than the purposes of the trust required. The controlling idea was to prevent the devolution of the title and its vesting in the devisees until they received it by the execution of the deeds of partition at the appointed time. If one of the grandchildren died before that time, though over 21 years of age, he could not devise his interest in the real estate; and if he

left no children it would not pass according to the law of inheritance of the state, but was to go to all the other grand-children *per capita.*

The estate of the executors was, therefore, as heretofore held in this case, a qualified fee. There was no contingent remainder, because the estate was not shaped with that view. There was, we think, clearly an executory devise. Such was the manifest intent of the testator. Where that is clear it is conclusive, unless contrary to some fixed rule of law or to public policy. Its breath sweeps away, as if they were cob-webs, all technical rules, if any there be, which militate against it. The point is not material, however, in the case as now before us, and we forbear to pursue it further. De-vises in trust of certain other specified lands and lots were made to Samuel F. Vinton and Sampson Mason. They are not involved in this controversy, and need not, therefore, be more particularly adverted to. There were also small be-quests to several parties not necessary to be named.

On the eighth of July, 1839, Allen C. McArthur, one of the sons of the testator, filed a bill in the court of common pleas of Ross county to set aside the will, upon the ground, among others, that the testator, Duncan McArthur, at the time of making the will, was of unsound mind and had not the requisite testamentary capacity. All those in anywise interested in the will, then living, were made parties and duly served with process. Guardians *ad litem* were appointed for the infant defendants. The guardians accepted and answered for their wards. Mrs. Effie Coons, who had been appointed executrix upon the decease of her mother, resigned, and her resignation was accepted, after the bill was filed. She gave as the reason for her resignation that the will required the three executors provided for to act jointly, and that persons could not be found who would accept the trust and give the requisite bond. Bond and Morris, the executors, had resigned, and their resignations had been accepted, before the bill was filed. Hence there were no executors before the court as par-ties to the bill.

Mason and Vinton answered, setting forth that they had

never accepted the trusts conferred upon them by the will, and declined to act.

The court ordered an issue to be made up touching the validity of the will. This was done, and it was submitted to a jury. The jury found against the will, and the court entered a decree accordingly. The decree gave the infant defendants until they should respectively attain to the age of 21 years and 6 months thereafter, and to the *feme covert* defendants respectively until they should become discovert and six months thereafter, to show cause against it. The proceedings were conducted in all respects with remarkable care and regularity.

This bill was filed by the children of Allen C. McArthur, who was the complainant in the bill to set the will aside. They were all born after that event. The husbands of such of them as are *covert* are also joined as complainants.

The bill is wholly silent as to the decree setting the will aside. It alleges that the complainant, Allen C. McArthur, is the last born of the grandchildren, and that he arrived at the age of 21 on the fourth day of March, 1875, and that the children of the testator are all dead. It alleges further that, upon the death of the testator, his children ignored the will and the rights of the grandchildren under it, and proceeded to appropriate to themselves all the lands in question by a proceeding in partition in the court of common pleas of Ross county. The prayer of the bill is that the defendants be required to account for the rents and profits of the lands; that it be decreed they hold their respective titles in trust for the grand and great grandchildren of the testator, according to the provisions of the will; that partition be made among those parties according to their several rights, and for general relief.

The defendants are very numerous. Eight of them are grandchildren, and four of them are great grandchildren, of the testator. The others are holders, by purchase, of the different portions of the premises described in the bill.

None of those to whom the right was reserved in the decree to come in thereafter and impeach it, ever availed

themselves of that privilege. The *feme coverts,* who were parties, are all dead, and the infants are barred by lapse of time.

The defendants rely upon two defences: *First,* the validity of the proceeding touching the will; *second,* the purchasers insist, also, that they are such *bona fide,* without notice of any infirmity in that proceeding.

The complainants take two objections to the record of the will case. One is that it cannot affect after-born grandchildren. The other is that the proceeding is fatally defective, by reason of the omission of executors as parties. This brings us to the heart of the controversy between the parties. We think neither of the points taken by the complainants is tenable. The twentieth section of the act of February 18, 1831, (3 Chase's St. 1788,) under which the will was set aside, is as follows: "That if any person interested shall, within two years after probate had, appear, and, by bill in chancery, contest the validity of the will, an issue shall be made up, whether the writing produced be the last will of the testator or testatrix or not, which shall be tried by a jury, whose verdict shall be final between the parties, saving to the court the power of granting a new trial, as in other cases; but if no person appear in that time the probate shall be forever binding; saving also to infants, married women, and persons absent from the state, or of insane mind, or in captivity, the like period after the removing of their respective disabilities."

The requirement that the proceeding shall be instituted "within two years after probate had" is imperative and unqualified, except by the savings specified. It is also declared that the verdict "shall be final between the parties," subject to the limitations expressed, which have no application here. It is clearly implied that those not then *in esse,* and who hence cannot be parties, are barred and concluded as effectually as those who are living. What is expressed and what is implied in a statute are alike parts of it. *U. S.* v. *Babbit,* 1 Black, 55–61.

There is no saving as to after-born children, and we cannot recognize their right to interfere, as they are seeking to

do in this case, without interpolating into the statute what it does not contain. If the result be not as we have suggested, cases may be readily imagined where there might be successive births through many years, and each child when born would have a right to renew the litigation touching the validity of the decree annulling a will. This would be an intolerable evil. It cannot be supposed the legislature intended such a solecism. In this case, according to the theory of the bill, the right of the youngest complainant accrued more than 35 years after the will was set aside. Such a construction of the statute would open Pandora's box, without a single good amid the thronging evils that would come forth from it.

"There are, strictly speaking, no parties" in such cases. *Runyon* v. *Price*, 15 Ohio St. 1–6. Every one *interested*, if he choose to do so, may make himself a party to the record. Nothing is in question but the legal *status* of the will. That instrument is the *res* of the controversy, and in the absence of fraud all persons concerned, whether formally before the court as parties or not, are necessarily alike concluded by the verdict.

"Substantially this is a proceeding *in rem*, and the court cannot take jurisdiction of the subject-matter by fractions. The will is indivisible, and the verdict of a jury establishes it as a whole or wholly sets it aside. To save the right of action to one is, therefore, necessarily to save it to all. The case belongs to that class of actions where the law is compelled either to hold the rights of all parties to be saved or all to be barred." *Bradford* v. *Andrews*, 20 Ohio St. 208–219.

The judgment of the probate court touching a will is, until reversed, conclusive upon all collateral issues. *Brown* v. *Burdick*, 25 Ohio St. 260–266.

"The rights of necessity form a part of our law." *Respublica* v. *Sparhawk*, 1 Dall. 383.

That those who are formal parties and those who are not are alike bound by the decree is conclusively shown by the well-considered cases of *Singleton* v. *Singleton*, 8 B. Monroe, 340; *Hunt* v. *Acre*, 28 Ala. 580; *Scott* v. *Calvit*, 3 How.

(Miss.) 148; *Jacobs* v. *Pulliam*, 3 J. J. Marshall, 200; *Hodges* v. *Bauchman*, 8 Yerg. 186; *Wells' Will*, 5 Littell, 273. These references are sufficient for the purposes of this opinion.

It is a settled rule of law that where there are contingent limitations and executory devises to persons not in being, a suit may proceed against those in being holding the prior estate, and that a judgment or decree against the latter binds the former in all respects as if they were *in esse* and parties to the suit. Especially is this so when the former are before the court by representation—that is, where the rights and interests which those not *in esse* would have if then *in esse* are the same with those of parties in being and before the court. *Gifford* v. *Hort*, 1 Sch. & Lef. 408; Story's Eq. Pl. §§ 145, 792; *Mead* v. *Mitchell*, 17 N. Y. 210; *Baylor's Lessee* v. *Dejarnette*, 13 Gratt. 152; *Falkner* v. *Davis*, 18 Gratt. 651; *Powell* v. *Wright*, 7 Beav. 444-449; *Lorrillard* v. *Costar*, 5 Paige, 172; *Palmer* v. *Flower*, 1 Moaks, 664; *Bossuct* v. *Moxon*, 13 Moaks, 716; *Wills* v. *Slade*, 6 Vesey, 498; *Lloyd* v. *Johns*, 9 Vesey, 37-52.

The rule springs from necessity. It involves the welfare of society, and rests on a solid foundation of reason and justice. If it were otherwise the long delay attending the settlement of rights of property in such cases would always be attended with inconvenience, and, not unfrequently, would bring in its train ruinous consequences.

Nor was it necessary executors should be parties. There was nothing for them to do. It was no part of their duty to interfere in the litigation. If they had done so they would have been entitled to no compensation for themselves or their counsel. *Andrews' Ex'rs* v. *His Adm'r*, 7 Ohio St. 143.

When an executor has not qualified he need not be made a party. 2 Dan'l, Ch. Pr. 252.

It is a general rule that no one need be made a party against whom there can be no decree. Barb. on Parties, 457. The law never requires a vain thing.

Looking at the face of the will we are satisfied that the executors were intended to hold and did hold their title

*virtute officii.* *Steele* v. *Worthington,* 2 **Ohio**, 182; *Gandolfo* v. *Walker,* 15 Ohio St. 251; *Perkins* v. *Moore,* 16 Ala. 9; *McBurney* v. *Carson,* 99 U. S. 567.

Under the statute of Ohio, when the resignation of the executors was accepted, their title became *ipso facto* divested and passed to the heirs at law. *Pitcher's Adm'r* v. *Reese,* 6 Ohio, 419; Tiffany on Trusts, 535; Hill on Trustees, 225. Thus both the trust estate created by the will and the legal title, as respects the executors, were as completely before the court as if the original executors had been parties as such to the record. In the most technical view of the subject what more could be required? When the will fell the trust estate fell with it, while the legal title remained where it was then vested. If the will had been sustained it would have been the duty of the court to appoint new executors. As that contingency did not arise such action was not necessary.

The views we have expressed render it unnecessary to consider the defence relied upon by some of the defendants—that they are *bona fide* purchasers. We will, however, say on that subject that if this were the turning point of the case it would receive our most careful consideration, and if we overruled it it would be done only in obedience to an irresistible legal necessity, if such should be found to exist. A stronger natural equity than that presented by these defendants can hardly be imagined.

But our attention has been called by several of the counsel for the defendants to another ground of objection to the bill, upon which we prefer mainly to rest our decision. It is that the decree setting the will aside cannot be attacked collaterally, and that if it be assailed the assault must be made in a proceeding had directly for that purpose. Adjudications of the supreme court of the United States are numerous and strong upon the subject. We will advert briefly to a few of them.

In *Voorhes* v. *The Bank of the U. S.* 10 Pet. 449, there had been a sale of land under the foreign-attachment law of Ohio. The action was ejectment for the premises, the plaintiff claiming under the vendee. The objections to the sale are thus

summarized in the syllabus: "1. No affidavit, as required by the statute, was found filed with the clerk; and the law provides that if this is not done the writ shall be quashed on motion. 2. Three months' notice of the attachment is to be given in a newspaper, and fifteen days' notice is to be given by the auditors, which did not appear to have been done. 3. The defendant is to be called three times preceding judgment, and the defaults recorded. No record of this appeared to have been made. 4. Auditors are not to sell until twelve months, and it did not appear when the sale was made. 5. The return of the sale shows a sale to Foster & Woodard, and a deed was made to Stanley, and no connection between them was shown in the record."

The court acquired jurisdiction by the seizure of the land and the return of the writ. All beyond that was merely error. The sale was sustained, when thus collaterally drawn in question, and the plaintiff recovered.

In the course of the opinion the court said: "If the principle once prevails that any proceeding of a court of competent jurisdiction can be declared to be a nullity by any court after a writ of error or appeal is barred by limitation, every county court or justice of the peace in the Union may exercise the same right, from which our own judgments or process would not be exempted. The only difference in this respect between this and any other court is that no court can revise our proceedings, but that difference disappears after the time prescribed for a writ of error or appeal to revise those of an inferior court of the United States or of any state; they stand on the same footing. *The errors of the court do not impair their validity:* binding till reversed, any objection to their full effect must go to the authority under which they have been conducted." Id. 474. The opinion in *Thompson* v. *Tolmie,* 2 Pet. 157, which involved a sale of land under an order of the orphans' court of the District of Columbia, is quoted from with approbation, to this effect: "The general and well-settled rule of law is that when the proceedings are collaterally drawn in question, and *it appears on the face of them that the subject-matter was within the jurisdiction of the*

*court, they are voidable only.*   The errors and irregularities, if
any exist, are to be corrected by some direct proceeding, either
before the same court to set them aside, or in an appellate
court." Id. 477.

In *Cooper* v. *Reynolds,* 10 Wall. 308–315, there had also been
a sale under proceedings instituted by attachment.   The same
doctrines as in *The Bank of the U. S.* v. *Voorhes* were affirmed
by the supreme court.   Mr. Justice Miller, speaking for the
court, said: "It is of no avail to show that there are errors in
the record unless they be such as prove that the court had no
jurisdiction of the case, or that the judgment rendered was
beyond its power.   This principle has been often held by
this court, and by all courts, and it takes rank as an axiom
of the law." Id. 316.

*Grignon's Lessee* v. *Astor,* 2 How. 319, is even fuller and
stronger on the subject we are considering than either of the
other cases to which we have referred.   That case involved a
sale of real estate by an administrator.   The court said:

"At the trial numerous questions of evidence arose, and
many instructions were asked of the court, to whose opinion
the plaintiffs excepted, but we do not deem it necessary to
notice them in detail, as, in our opinion, the whole merits of
the controversy depend on one single question: had the
county court of Brown county jurisdiction of the subject on
which they acted?   The power to hear and determine a cause
is jurisdiction.   It is *coram judice* whenever a case is pre-
sented which brings this power into action.    *    *    *    *   If
the law confers the power to render a judgment or decree,
then the court has jurisdiction.    *    *    *    *   But on a pro-
ceeding to sell the real estate of an indebted estate *there are
no adversary parties.*   The proceeding is *in rem*—the adminis-
trator represents the land; they are analogous to proceedings
in the admiralty, where the only question of jurisdiction is
the power of the court over the thing—the subject-matter
before them—without regard to the persons who may have
an interest in it.   *All the world are parties.*   In the orphans'
court, and in all courts who have the power to sell the estates
of intestates, their action operates on the estate, not on the

heirs of the intestate, The purchaser claims, not their title, but one paramount. 11 S. & R. 426. The estate passes to him by operation of law. 11 S. & R. 428. The sale is a proceeding *in rem*, to which all claiming under the intestate are parties, (11 S. & R. 429,) which directs the title of the deceased. 11 S. & R. 430. * * * * A purchaser is not bound to look beyond the decree. If there is error in it of the most palpable kind—if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law, which gave them the power to hear and determine the case before them—the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error. So where an appeal is given but not taken in the time prescribed by law." Id. 338-340.

The application and effect of the reasonings we have just quoted, with respect to the case in hand, are too obvious to require remark. Such is now the settled doctrine of the supreme court in such cases. *Comstock* v. *Crawford,* 3 Wall. 396; *McNitt* v. *Turner,* 16 Wall. 352; and *Mohr* v. *Manierre,* decided at the last term and not yet reported. Authorities to the same effect, touching the point to which we are addressing ourselves, might be multiplied without limit, but upon so plain a proposition nothing further in that way can be necessary.

That a proceeding to set aside a will, under a statute like that of Ohio, here in question, is a proceeding *in rem,* seems to be the voice of the universal jurisprudence of the country. *Benoist* v. *Murrin,* 48 Mo. 48; *St. John's Lodge* v. *Callender,* 4 Iredell, 335-342; *Nalle* v. *Fenwick,* 4 Rand. 585-588; *Woodruff* v. *Taylor,* 20 Vt. 65-73; *Fry* v. *Taylor,* 1 Head, 594-595; *Crippen* v. *Dexter,* 13 Gray, 330-332.

Upon the whole case, we are of opinion that the bill must be dismissed, and it is dismissed accordingly.