No. 28,048.

Laura S. Marr et al., *Appellees*, v. J. A. Barnes et al., *Appellants*.

(267 Pac. 9.)

Opinion filed May 5, 1928.

*W. Glenn Hamilton,* of Topeka, for the appellants.

*Oscar Raines, Ralph F. Glenn, Ivah Raines Glenn* and *W. E. Atchison,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to contest the will of the late Ida S. Barnes, of Oakland, who died on December 24, 1924, leaving as her heirs four married daughters, Laura S. Marr, Hattie Dewey, Ella L. Woods and Ethel Gibbs, and one son, John A. Barnes.

The husband of Ida, William Barnes, died on May 1, 1922, having devised all his estate to her. On July 20, 1922, Ida made a will disposing of all her property, as follows:

| | |
|---|---:|
| To Laura | $1.00 |
| To Hattie | 1.00 |
| To Hattie, note of Hattie and husband due testatrix | 500.00 |
| To Ella, Wabaunsee county farm worth $4,000 or | 5,000.00 |
| To Ethel, house and three lots in Oakland, worth about | 2,000.00 |

To Ethel, piano.
To John, home and two lots in Oakland, worth about............... $2,500.00
To John, house and two lots in Oakland, worth about................ 1,500.00
To John, household furniture.
To Ella, Ethel and John, residuary estate, share and share alike, worth
    about ...................................................... 4,739.70

The husband of Ella was named as executor.

Some months later, on December 20, 1922, Ida made another will, which is the one which provoked this lawsuit. By its terms the Wabaunsee county farm was devised to John, and the least valuable of the Oakland properties, worth about $1,500, was devised to Ella. The devises to Laura, Hattie and Ethel, as well as the disposition of the residuary estate, were as outlined above in the will of July 20; and John was named as executor.

The latter will was admitted to probate on December 29, 1924, five days after the death of the testatrix. On July 7, 1925, this action was begun by Laura and Hattie as plaintiffs to set aside the order of the probate court, alleging that the will was brought about by the undue influence of their brother John A. Barnes, and that at the time of its purported execution the testatrix was 73 years old, afflicted with a cancer, sick in body and mind, and incapable of transacting business and managing her affairs. Ella, Ethel and John were made defendants in the action, but Ella and Ethel filed no answer and took no part in the contest except as witnesses testifying in behalf of plaintiffs, their sisters. The defense was borne by John A. Barnes, principal beneficiary. On a belated motion of plaintiffs John was also joined as defendant in his official capacity as executor. The court order to that effect was entered on February 23, 1926. On the same day John filed answers in both capacities, pleading a general denial, the regular admission of the will to probate, his own appointment and qualification as executor, and further—

"This defendant alleges that the claimed cause of action of the plaintiffs set out in their amended petition is barred by the one-year statute of limitations provided in chapter 160 of the Session Laws of Kansas, 1925."

The court called an advisory jury which answered certain special questions:

"1. At the time of the execution of the will in question was Ida S. Barnes of sound mind? A. Yes, she was of sound mind.

"2. Was the execution of the will in question, dated December 20, 1922, procured by the undue influence of the defendant, John A. Barnes? A. Yes,

the execution of the will dated December 20, 1922, was procured by the undue influence of John A. Barnes.

"If you answer question 2 that the will dated December 20, 1922, was procured by undue influence of John A. Barnes, then you should answer the following questions:

"3. Was the will of Ida S. Barnes, dated July 20, 1922, procured by undue influence of John A. Barnes? A. No, the will of July 20, 1922, was not procured by the undue influence of John A. Barnes.

"4. Was Ida S. Barnes of sound mind on July 20, 1922? A. Yes, she was of sound mind July 20, 1922."

Plaintiffs filed a motion to strike out the jury's answer to question 3 on the ground that it was not within the issues and that the court had no jurisdiction to consider the validity of the will of July 20, 1922, as it had not been admitted to probate. This motion was sustained; the special finding of the jury in response to question 2 was adopted and approved; and judgment was entered setting aside and holding for naught the will of December 20, 1922, and the order of the probate court pertaining thereto.

John A. Barnes individually and as executor appeals, raising three points against the judgment:

(1) That plaintiffs have no interest in the action.

(2) That the defendant was not brought into the action in his official capacity as executor until too late.

(3) That the evidence did not support the judgment.

Noting these in order, it is argued that because the unprobated will of July 20, 1922, cut off the plaintiffs with a pittance, they have no concern with the validity or invalidity of the later will which is the subject matter of this lawsuit. But the will of July was never probated. Until that is done a will is merely "a scrap of paper," mayhap of some evidential significance—no more. A will neither confers rights on its named beneficiaries nor deprives heirs of their rights until it has passed the scrutiny of the probate court; and its presentation for probate and some action favorable or unfavorable thereon by that tribunal are prerequisites to a contest over its validity in a court of general jurisdiction. (*Evans v. Evans,* 109 Kan. 608, 201 Pac. 60.) The will of July, 1922, cannot be the basis of any rights in John nor in prejudice of the rights of his sisters for another excellent reason. John knew of this will and had it under his power and control for over three years. It may also have been within the knowledge, power and control of his sisters as

well.  It was not offered for probate during that period.  Therefore, so far as the will of July, 1922, is concerned, the mother's estate would have to be regarded as an intestacy and would descend to these quarreling litigants share and share alike.  The statute says:

"No lands, tenements or hereditaments shall pass to any devisee in a will who shall know of the existence thereof, and have the same in his power and control for the term of three years, unless within that time he shall cause the same to be offered for or admitted to probate; and by such neglect the estate devised to such devisee shall descend to the heirs of the testator." (R. S. 22-233.)

We note that the industry of counsel has unearthed cases which apparently hold that an heir who was disinherited by an earlier *valid, unprobated* will cannot maintain an action to contest a later will or codicil.  How an *unprobated* will could be said to be a *valid* will and used in litigation as a *valid* will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow.

In *Estate of Benton,* 131 Cal. 472, it was held that an heir at law of a deceased person may contest a will offered for probate without any other showing of beneficial interest than such heirship, although the will may provide for the contestant a larger share of the estate than would be received by him as an heir at law.

In *Murphy, Ex'r, v. Murphy,* (Ky. App.) 65 S. W. 165, it was held that an heir was entitled to contest the testator's will which was probated, though he was also excluded by a previous will which had not been probated, as the previous will might never be offered for probate, and, if so, might also be the subject of contest.

In Borland on Wills and Administration, 210, the rule is stated:

"An heir at law may contest without any other showing of interest than heirship."

In 3 Alexander's Commentaries on Wills, ¶ 1325, it is said:

"The statutes sometimes enumerate those who may contest the validity of wills.  The general rule, however, whether covered by statute or not, is that those only may contest the validity of a will who would be entitled to share in the estate of the decedent had he died intestate, or should the will be denied probate.  This gives the privilege of contest not only to the heir at law, next of kin, or the surviving husband or wife of the decedent who may be entitled to succeed to his estate in the event of intestacy. . . ."

Passing to the next point urged against the judgment it will be noted that one year, one month, twenty-nine days, elapsed after

the will of December 20, 1922, was probated before John was made a defendant in his official capacity as executor. The action itself was timely begun against John as principal beneficiary. Was a cause of action sufficiently stated against him individually or was it prerequisite thereto that he be joined as executor? Cases can readily be conceived where the litigation could proceed to no purpose without the executor's participation, and doubtless that is the reason the rule is so broadly stated by some of the authorities that he is a necessary party to a suit to set aside a will. (Borland, *supra,* 209, 210; 40 Cyc. 1262; 28 R. C. L. 392.) If the executor's duties were more than perfunctory, if a judgment affecting the validity of the will would materially interfere with his sworn duty or hinder him in the execution of some particular trust imposed on him by its terms, he would, of course, be a necessary party. Statute law would or might affect the question whether a conclusive contest over the validity of a will could be maintained without the executor being a party to the action. The decided cases in other jurisdictions are not all to one effect. In *McArthur v. Allen,* 3 Fed. 313, it was held that in a proceeding to set aside a will governed by the law of Ohio the executor was not a necessary party. In *Fox v. Fee,* 49 N. Y. Supp. 292, it was held that the executor to whom no land had been devised by a will was not a necessary party to an action to annul it. The opinion in that case explains when and when not an executor is a necessary party. The court said:

"It is asserted in behalf of the plaintiffs that the executrix of Henry Fox was a necessary party in her representative capacity to the action in the supreme court, and *McArthur v. Scott,* 113 U. S. 340, 5 Sup. Ct. 652, is cited in support of this contention. That case arose over an estate consisting of lands and personal property, which the testator devised to his executors in trust, and directed that the income therefrom be paid to his children and grandchildren until the youngest grandchild, should he live to be 21 years of age, should arrive at that age, and then convey the remainder to his grandchildren in equal shares. The will was admitted to probate, and afterwards an action was brought by one of the children against the other children and all the grandchildren of the testator to annul the probate, and set aside the will, and a decree was entered annulling the will and its probate. The executors were not made parties to the action. Grandchildren were afterwards born, and they brought an action to recover their interests in the estate under the will of their grandfather, and it was held that the executors and trustees, who held the legal title of the estate, and were charged with the duty of protecting it, were necessary parties, and that the judgment annulling the will was not, for this reason, binding on the after-born grandchildren. The decision was based upon the ground that the

title to the entire estate vested in the executors as trustees, and that their title could not be devested without being made parties to the action. This case is so explained in *Miller v. Railway Co.*, 132 U. S. 662-671, 10 Sup. Ct. 206, where the doctrine of virtual representation is expressly sanctioned. The case at bar is quite different. Under neither of the wills of Henry Fox did his executors take any interest in the three lots specifically devised to his sons, nor were they ever given power to sell those three lots, nor was the title to the remaining real estate of the testator, if he had any, devised to the executors under either will. They were simply given power to sell the real estate, if he had any, except said three lots. The executrix, having no title to the real estate involved in the action, was not a necessary party thereto." (p. 297.)

In this state a testate decedent's real property passes directly to his devisees; his intestate realty devolves directly on his heirs; and the executor or administrator has no concern therewith unless it is needed to pay the debts of the decedent. In this case there were no debts, or none which materially affected the estate, so the failure to make John A. Barnes as executor a party defendant within the time allowed by the statute was not fatal to the action. This conclusion renders it unnecessary to decide whether the belated making of John as executor a party to this action was governed by Laws 1925, ch. 160, effective May 28, 1925, which amended R. S. 22-223 by cutting down the time from two years to one year in which an action to contest a will might be begun.

Touching the third point urged by appellant, this court can discern no shortage of evidence to prove that defendant John A. Barnes systematically dominated the mind and conduct of his mother to an extent which was altogether undue, and that the purported will of December 20, 1924, was not the unconstrained will of Ida S. Barnes, mother of these litigants. The evidence which the parties have chosen to abstract for our perusal has been read and considered with critical appraisement—not for its credence, for that was the prerogative of the trial court, but for its probative value and on the assumption that plaintiffs' evidence, including the significant and probative circumstances, was true; and so considered this court cannot assent to the contention that it did not support the controlling finding of the trial court and the judgment entered thereon.

The judgment is affirmed.