Electronically Filed
Intermediate Court of Appeals
29173
30-OCT-2013
08:25 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF THE JACK WONG YUEN
AND LEI YOUNG WONG YUEN REVOCABLE LIVING
TRUST DATED APRIL 22, 1996

NO. 29173

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(T. NOS. 06-1-0019, 07-1-0001 and 07-1-0003)

OCTOBER 30, 2013

NAKAMURA, CHIEF JUDGE, FOLEY AND LEONARD, JJ.

OPINION OF THE COURT BY LEONARD, J.

Petitioner-Appellant Frances Kailieha (**Kailieha**)
appeals from a Third Circuit Probate Court (**Probate Court**) Final
Judgment, which was entered in favor of Respondents-Appellees
Jarrett N. Wong, Jamie S. Wong, Jace T. Wong, and Jacelyn Wong
(**the Wong Appellees**) and against Kailieha on July 9, 2008.[1]  On
appeal, Kailieha contends that the Probate Court erred in
entering judgment in favor of the Wong Appellees by concluding
that Kailieha "has not presented genuine issues of material fact
as to her standing" to contest the validity of her mother's 1996
trust and will.  We agree.  Under the facts presented in this

---

[1]      The Honorable Greg K. Nakamura presided.

case, we hold that Kailieha has alleged a sufficient interest in her mother's estate, as an heir-at-law, to establish her standing to challenge the subject instruments, notwithstanding the existence of a prior will that, although facially valid, has not and may not ever be submitted to probate.

I.    BACKGROUND FACTS

Jack Wong Yuen (**Jack**) and Lei Young Wong Yuen (**Lei**) (collectively **"Settlors"**) signed an indenture of trust, dated April 22, 1996, entitled the "Revocable Living Trust of Jack Wong Yuen and Lei Young Wong Yuen" (**Joint Trust**).  On September 16, 1996, Lei signed a Will (**1996 Will**) purporting to be her last will and testament that, among other things, transferred the "residue and remainder" of her probate estate into the Joint Trust.  On May 30, 2003, the Joint Trust was amended to add Lei's daughter Moira Bright (**Bright**), as a co-trustee with James Wong, Jr., who was Jack's nephew.  Jack died on September 20, 2004.  Lei died nearly a year later, on July 19, 2005.

Jack and Lei were survived, amongst others, by daughters, Esther Nichols, Rowena Adviento, Kailieha, and Bright, grandsons, Shane Ah Chock Campbell (**Campbell**)[2] and Bernard Kailieha, and Jack's brother, James Wong, Sr.

The Wong Appellees (Jarrett, Jace, Jamie and Jacelyn) are the children of James Wong, Jr. – Jack's nephew, and the grandchildren of James Wong, Sr.  James Wong, Jr. predeceased Lei.

Under terms of the 1996 Will, all of Lei's real property holdings and her residual estate were transferred into the Joint Trust upon her death, with her tangible personal property being bequeathed to her daughters (if Jack predeceased her).  Under the terms of the Joint Trust, upon the deaths of Jack and Lei, the personal property of the trust was to be distributed free from any trust in equal shares to the "brothers and nephew" of Jack and the "daughters and grandsons" of Lei.

---

[2]    Although Campbell is Jack and Lei's grandchild, both Jack and Lei's obituaries refer to him as their "hanai son."

The real property held by the trust, however, was to remain in trust and to be conveyed to James Wong, Jr., as trustee, for the benefit of "the brothers and nephew of Jack." The Joint Trust further provided:

> If any of the above named beneficiaries [Jack's brothers and nephew] should predecease the last survivor of us [the settlors], or if any of them should die during the term of the trust herein established, his interest shall terminate and the survivors of them shall be the trust beneficiaries.

In addition, the Joint Trust stated that the real property trust created for the benefit of Jack's "brothers and nephew" would terminate

> when all of the real property is sold and the net proceeds distributed, or upon the death of the last surviving brother of Jack Wong Yuen. In such an event, the real property shall be conveyed, free of trust, unto my nephew, James Wong, Jr. or, if deceased, then unto his surviving children in equal shares.

James Wong, Sr. was the sole surviving brother of Jack. As James Wong, Jr. was deceased, the corpus of the real property trust was to be conveyed to his surviving children, the Wong Appellees, upon the death of James Wong, Sr. However, James Wong, Sr. disclaimed his interest in the Joint Trust on February 14, 2006.

Prior to the execution of her 1996 Will and the Joint Trust, Lei executed a will on November 10, 1975 (**1975 Will**), which bequeathed everything to Jack; but if Jack predeceased Lei, everything was left to Campbell, subject to a life estate in favor of Walter Wong Yuen, one of Jack's brothers, who did not survive Jack and Lei.

In the proceeding below, both Kailieha and Campbell submitted sworn declarations stating that they had entered into an agreement in which Campbell promised Kailieha that, if she prosecuted her petition to challenge the 1996 Will and Joint Trust to a successful conclusion, and if the 1975 Will were ever offered into probate and proven valid, he would share with Kailieha Lei's estate devised to Campbell under the 1975 Will.

3

The 1975 Will has never been submitted for approval in a probate proceeding.

On October 20, 2006, the Wong Appellees petitioned the probate court to, among other things, compel an accounting and distribution of the assets of the Joint Trust. In an objection to the Wong Petition, Kailieha alleged that Lei "suffered from Alzheimer dementia since as early as 1988 and that she did not possess the legal capacity to create the subject trust, to fund it or to otherwise convey an interest in property which the Petition assumes is properly a part of its corpus." In addition, while the Wong Petition was pending, Kailieha filed a petition challenging the validity of the Joint Trust and the 1996 Will, alleging that her mother Lei lacked the mental capacity to execute the Joint Trust and 1996 Will, and asserting that the Joint Trust and 1996 Will were the products of undue influence.

On November 30, 2007, the Wong Appellees filed a motion for summary judgment, asserting that Kailieha did not have standing to challenge the 1996 Will and Joint Trust. The Probate Court granted the Wong Appellees' motion based on the following reasons, which were incorporated into the court's order:

> HRS § 560:7-201(a) (2006) states that the 'court has jurisdiction of proceedings and interested persons concerning the internal affairs of trusts.' The definition of 'interested person' is found in HRS § 560:7-201(a) (2006). The Hawaiʻi Supreme Court views the definition to include only those persons who have a financial interest in the estate itself. *In re Damon Estate*, 109 Hawaiʻi 502, 512 (2006).
>
> If the Trust and 1996 Will are invalid and if the 1975 Will is valid, the[n] Kailieha has no direct financial interest in the Estate. Therefore, she would not have standing to contest the Trust and the 1996 Will.
>
> At this juncture, the question is which party or parties have what burden with respect to the issue of the 1975 Will and whether the burden has been met. The Deposit of Original Will relating to the 1975 Will is proof of the existence of the 1975 Will.
>
> The 1975 Will meets the requirements of HRS § 560:2-504 (2006) for being self-proved. [] HRS § 560:3-406(b) (2006) states that:

> [i]f the will is self-proved, compliance with the signature requirements for execution is conclusively presumed and other requirements of execution are presumed subject to rebuttal without the testimony of any witness upon filing the will and the acknowledgment and affidavits annexed or attached thereto, unless there is proof of fraud or forgery affecting the acknowledgment or affidavit.

HRS § 560:3-406(b) (2006).

> Under HRS § 560:3-407 (2006), '[p]roponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue.' Therefore, Movants have met their burden of producing evidence indicating that the 1975 Will is valid. As such, to escape summary judgment, Kailieha now has the burden showing that, based upon admissible facts, that there are genuine issues of fact as to the validity of the 1975 [Will]. She has not done so.

> To the extent that Kailieha argues that she has a financial interest in the Estate because she has an agreement with a beneficiary under the 1975 Will, that may constitute a contract between the two, but that does not mean that Kailieha has a financial interest in the Estate.

> Therefore, summary judgment is granted in favor of Movants and against Kailieha on the ground that Kailieha has not presented genuine issues of material fact as to her standing to present the claim in this action.[3]

Kailieha filed a petition for reconsideration, which was denied on April 8, 2008. Thereafter, the Probate Court ordered the distribution of the assets of the Joint Trust to the Wong Appellees. Kailieha filed a notice of appeal on May 19, 2008, prior to the Probate Court's entry of the Final Judgment. Nevertheless, for the reasons set forth in this court's November 18, 2008 order denying the Wong Appellees' motion to dismiss this appeal, we conclude that this court has appellate jurisdiction.

II.  POINTS OF ERROR

Kailieha raises two points of error on appeal, contending that the Probate Court erred by: (1) granting summary judgment against Kailieha on the grounds that she lacked standing to challenge her mother's 1996 Will and the Joint Trust;

---

[3]  Misspellings of "Kailieha" have been corrected.

and (2) denying Kailieha's motion to reconsider the entry of summary judgment against her.

III. APPLICABLE STANDARDS OF REVIEW

The appellate court reviews a lower court's grant or denial of summary judgment *de novo*. "Under the *de novo* standard, [the appellate court is to] examine the facts and answer the question without being required to give any weight to the circuit court's answer to it." Hawaii Ventures, LLC, v. Otaka, Inc., 114 Hawai'i 438, 457, 164 P.3d 696, 715 (2007) (citations, internal quotation marks, and brackets omitted). Moreover,

> [a] grant of summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In other words, summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.

Balthazar v. Verizon Hawaii, Inc., 109 Hawai'i 69, 72, 123 P.3d 194, 197 (2005) (footnote, citations, and internal quotation marks omitted). Additionally, "[the appellate court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." Kahale v. City & Cnty. of Honolulu, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

The issue of standing is reviewed *de novo* on appeal. See, e.g, Right to Know Comm. v. City Council, City & Cnty. of Honolulu, 117 Hawai'i 1, 7, 175 P.3d 111, 117 (App. 2007).

The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002).

IV.   DISCUSSION

      A.    Summary Judgment on the Issue of Standing

            Kailieha argues that the Probate Court erred in determining that she lacked standing to challenge the 1996 Will and the Joint Trust.  Kailieha maintains that she has a sufficient financial interest in her mother's estate because any part of Lei's estate that passes intestate would pass to Lei's children, including Kailieha.  In addition, Kailieha maintains that she has a financial interest in Lei's estate as the assignee of a portion of Campbell's interest in Lei's estate, if any, that would arise if the 1975 Will were to be probated.  The Wong Appellees contend, as the Probate Court concluded, that Kailieha lacks standing because she did not demonstrate that she would benefit financially if her challenge to the 1996 Will and Joint Trust were successful, relying primarily on In re Damon Estate, 109 Hawai'i 502, 128 P.3d 815 (2006) (**Damon Estate**).  We conclude that the Probate Court's reading of Damon Estate was too broad and that Kailieha has standing in this case.

            "The [probate] court has jurisdiction of proceedings initiated by trustees and *interested persons* concerning the internal affairs of trusts."  Hawaii Revised Statutes (**HRS**) § 560:7-201(a) (2006) (emphasis added).  "Interested persons" includes:

> heirs, devisees, children, spouses or reciprocal beneficiaries, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person . . . .  The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

HRS § 560:1-201 (2006).

            In Damon Estate, the Hawai'i Supreme Court noted that the definition of interested persons "allows the court to determine the sufficiency of a party's interest relative to the particular probate proceeding," and that "[a]n interested person, however, will always possess an interest in the estate itself."

109 Hawai'i at 511-12, 128 P.3d at 824-25. In so finding, the Damon Estate court held that Joan Haig, an income beneficiary and measuring life of the trust created under the last will and testament of Samuel Mills Damon, did not have any interest in Damon's estate that would be affected by the subject proceeding, which was a determination of the stirpital root for the distribution of the corpus of the trust upon its termination, i.e., after Joan Haig's death. Id. at 512, 128 P.3d at 825. As such, Joan Haig's interest in that particular proceeding was insufficient for her to be considered an "interested person." Id.

Damon Estate was not intended to create an unreasonably restrictive standard of standing for heirs-at-law who might or might not ultimately benefit from a proceeding to contest a will. In the proceeding at issue in Damon Estate, there was absolutely no set of facts under which Joan Haig would have a property right in or claim against the corpus of the Damon trust. Here, however, an heir-at-law who successfully challenges a testamentary instrument has the possibility of taking via intestacy, depending on the outcome of this proceeding and further proceedings. See HRS §§ 560:2-101(a)(2006), 560:2-103(1) (2006) and 560:2-106 (2006) (establishing that an intestate decedent's estate passes, in the first instance, to the decedent's descendants by representation, beginning with the decedent's child(ren)). As discussed below, the Wong Appellees argue that the Circuit Court correctly concluded that Kailieha would not receive any benefit under the 1975 Will. As Kailieha points out, however, the 1975 Will has not been submitted to probate and there is no certainty that it will ever be submitted, nor do the Wong Appellees allege this to be the case. Unlike Joan Haig, Kailieha seeks to establish a property right in or claim against Lei's estate and a challenge to the 1996 Will and Joint Trust is a necessary step in pursuing such a claim. Accordingly, Kailieha has a claimed interest in Lei's estate

8

sufficient to give her standing to contest the Joint Trust and 1996 Will, contingent on the successful invalidation of Lei's 1996 Will and the Joint Trust, and further proceedings.

The Wong Appellees urge this court to determine that Kailieha has no standing in this proceeding because she takes nothing under the 1975 Will, which effectively bequeaths Lei's entire estate to Campbell. The Wong Appellees argue that although the 1975 Will has not yet been submitted to probate, it satisfies all of the statutory requirements for a facially valid will under HRS § 560:2-502.[4] Therefore, the Wong Appellees contend that this Court must take the 1975 Will into consideration in determining whether Kailieha has standing to contest the Joint Trust and 1996 Will. The Wong Appellees cite various cases from other jurisdictions for the proposition that individuals who were disinherited by a prior testamentary instrument do not have standing to challenge a subsequent instrument because they lack the requisite financial interest in the estate.[5] The Hawai'i Supreme Court, however, has generally

---

[4] The Wong Appellees point to the 1975 Will itself in order to demonstrate that it complied with the three statutory requirements for being a facially valid will. HRS § 560:2-502 provides that in order to be a facially valid will, a will must be (1) in writing, (2) signed by the testator, and (3) signed by at least two individuals who indicated that the testator signed the will in their presence. HRS § 560:2-502 (2006). The Probate Court also found that the 1975 Will was "self-proved." Under HRS § 560:2-504, a self-proved will is evidence that the will is validly *executed and attested* to. While a self-proving will is evidence that the will is properly executed, "to be effective to prove the transfer of any property or to nominate an executor, a will must be declared to be valid by an order of informal probate by the registrar, or an adjudication of probate by the court." HRS § 560:3-102 (2006). As such, the fact that the 1975 Will is self-proving is not evidence, in and of itself, that the 1975 Will is determinative, absent some affirmative act to submit the will to probate. Generally, a probate proceeding "may be commenced by an interested person," see HRS § 560:3-401 (2006) (for formal probate proceedings), or a parent, spouse, descendant of a parent of the decedent for informal probate proceedings pursuant to HRS § 560:3-302. There is nothing in the record to indicate that the 1975 Will will be submitted to probate, nor do the parties allege this to be the case.

[5] See, e.g., Ames ex rel. Parker v. Reeves, 553 So. 2d 570 (Ala. 1989), Newman v. Newman, 766 So. 2d 1091 (Fla. Dist. Ct. App. 2000), Jennings v. Bridgeford, 403 S.W.2d 289 (Tenn. 1966), Jolley v. Henderson, 154 S.W.3d 538 (Tenn. Ct. App. 2004), Keasler v. Estate of Keasler, 973 S.W.2d 213 (Tenn. Ct. App. 1997), Donnelly v. Hendrix, 355 S.W.2d 116 (Tenn. Ct. App. 1961).

held that in determining whether the plaintiff has standing, appellate courts

> look solely to whether the plaintiff is the proper plaintiff in this case, *without regard to the merits of the allegations in the complaint.*

Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, 113 Haw. 77, 94-95, 148 P.3d 1179, 1197 (2006) (citing Hawaii Thousand Friends v. Anderson, 70 Haw. 276, 281, 768 P.2d 1293, 1298 (1989)) (emphasis added) (internal quotation marks and brackets omitted). The Wong Appellees' argument focuses on not only the merits of Kailieha's allegations that she has a financial interest in Lei's estate, but the ramifications of a successful contest in order to bar Kailieha's challenge to the Joint Trust and 1996 Will, the merits of a probate proceeding that has not been initiated, and the merits of Kailieha's assertion that she is an assignee of a portion of Campbell's interest under the 1975 Will.[6]

Hawaii's standing jurisprudence appears to be more consistent with jurisdictions that have held that a contestant is an "interested person" by virtue of the fact that they may

---

[6] Although no cases have arisen in modern times, the Hawai'i Supreme Court has noted that "[n]o question is made as to the right of an heir to assign his possibility of inheritance." Estate of Bernice Pauahi Bishop, 5 Haw. 288, 290 (1885). In addition, HRS Chapter 560 defines a "beneficiary" as including "the owner of an interest by assignment or other transfer." HRS § 560:1-201 (2006). In general, "an assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." Fireman's Fund Ins. Co. V. AIG Haw. Ins. Co., 109 Hawai'i 343, 349, 126 P.3d 386, 392 (2006) (citation omitted). Courts have generally recognized that assignees or grantees of an heir's right to contest, or of his property rights in the decedent's estate, are generally entitled to contest a will of the decedent which the heir would have been entitled to contest. See In re Estate of Clark, 271 P. 542, 545-46 (Cal. Ct. App. 1928) (finding that the right of action to contest a will is assignable because "a contest of a will is in its essence an action for the recovery of property unlawfully taken or about to be taken from the ownership of the contestant . . . [and an] action arising out of the violation of a right of property . . . may be transferred by the owner."); Trevino v. Turcotte, 564 S.W.2d 682, 687 (Tex. 1978) (noting that it is an established rule "that the heirs, devisees and legatees of a decedent may validly assign all or any part of their interests in a decedent's estate," which enables them to contest a will's validity); see also 39 A.L.R.3d 696 § 3(a). A majority of states hold that the right to contest a will is a property right that is assignable. Yingling v. Smith, 255 A.2d 64, 66 (Md. 1969) (identifying numerous states that adopt this view).

inherit via intestacy, despite any prior unprobated wills.  In <u>In re Estate of Schlenker</u>, the Illinois appellate court held that:

> a disinherited heir at law stands to inherit a portion of a
> decedent's estate if it should be determined that the estate
> is to be distributed under the laws of intestacy, and a
> disinherited heir at law has an existing interest that would
> be detrimentally affected by the probate of a decedent's
> will.

789 N.E.2d 456, 458 (Ill. App. Dist., 2003).  In <u>Schlenker</u>, the petitioner (the testator's child) filed a petition challenging the validity of a 2001 will on the grounds that the testator had been impaired by a variety of physical and mental conditions and had lacked the mental capacity required to make decisions regarding the disposition of his estate and property.  <u>Id.</u> at 457.  The executor alleged that the petitioner did not have standing to challenge the will because the petitioner was not a legatee and would not stand to benefit under three prior wills, which she had not challenged.  <u>Id.</u> at 458.  In <u>Schlenker</u>, the 2001 will was the only will that had been admitted to probate; however, the Petitioner indicated that she intended to challenge each of the prior wills if subsequently submitted to probate. <u>Id.</u>  The court recognized that the prior wills might be submitted for probate should the 2001 will be declared invalid, but stated:

> We do not find that [the petitioner's] interest is remote or
> otherwise nonexistent merely because she may be required to
> contest the 2001 will and three prior wills before she is
> entitled to succeed to the testator's estate.  In terms of
> the right to take by intestacy, each time a disinherited
> heir successfully challenges the validity of a will, that
> heir is thereby benefitted.  Until all will contests are
> decided, it cannot be said that [petitioner] is not an
> interested party.

<u>Id.</u> at 458-59.[7]  As such, that court held that the trial court

---

[7] The Illinois statutory definition of "interested person" is different, but similar, to Hawai'i's statutory definition.  The Illinois statute provides that an "interested person" means

> one who has or represents a financial interest, property right or
> fiduciary status at the time of reference which may be affected by
> the action, power or proceeding involved, including without
> limitation an heir, legatee, creditor, person entitled to a
> spouse's or child's award and the representative.

erred in finding that the petitioner did not have standing to contest the will.  Id. at 459.

Similarly, a widely cited Kansas Supreme Court case noted

> [there are] cases which apparently hold that an heir who was disinherited by an earlier *valid, unprobated* will cannot maintain an action to contest a later will or codicil.  How an *unprobated* will could be said to be a *valid* will and used in litigation as a valid will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow.

Marr v. Barnes, 267 P. 9 (Kan. 1928) (emphasis in original) (cited and adopted by Lonas v. Betts, 160 F.2d 281 (D.C. Cir. 1947)); Stephens v. Brady, 73 S.E.2d 182 (Ga. 1952); In re Estate of Powers, 106 N.W.2d 833 (Mich. 1961) ("An instrument submitted as a final testament enjoys no legal, distinguished from evidentiary, worth unless and until it is authenticated by judgment . . . [and] . . . heirs at law [are not] barred as contestants by prior unprobated wills."); In re Will of Stern, 311 P.2d 385 (N.M. 1957).  In Marr, the testator's daughters petitioned to have their mother's will invalidated on the grounds of undue influence.  267 P. at 10.  The court rejected the respondent's argument that because a prior unprobated will disinherited the plaintiffs, "they have no concern with the validity or invalidity of the later will."  Id.  Instead, the court responded by stating

> the [earlier will] was never probated.  Until that is done, a will is merely "a scrap of paper," mayhap of some evidential significance - no more.  A will neither confers rights on its named beneficiaries nor deprives heirs of their rights until it has passed the scrutiny of the probate court; and its presentation for probate and some action favorable or unfavorable thereon by that tribunal are prerequisites to a contest over its validity in a court of general jurisdiction.

Id.  The court further stated that the will "was not offered for probate," therefore, "the mother's estate would have to be

---

755 Ill. Comp. Stat. Ann. 5/1-2.11 (West 2011).

regarded as an intestacy" and would descend to the litigants in equal shares. Id. The Marr court thus held that the daughters had the right to contest the subsequent will as heirs-at-law. Id. at 11.

The Wong Appellees argue that this line of reasoning is in conflict with the presumption against intestacy. We disagree. It does not appear that the presumption against intestacy has ever been held to outweigh the public policy against a fraudulently or otherwise improperly induced will. In In re Trust Estate of Weill, the Hawai'i Supreme court reported that

> the presumption against intestacy or partial intestacy is a strong one. . . . The law abhors intestacy and presumes against it. A testator is presumed to have intended the disposition of his entire estate for the benefit of the beneficiaries named in his will.

48 Haw. 553, 563, 406 P.2d 718, 724 (1965) (internal citations and quotation marks omitted). In Weill, the supreme court stated that presumption against intestacy allows the courts to "seek the intention of the testator from a study of the will as a whole" such that the intention of the testator can be effectuated. Id. This presumption also gives the courts the power to "depart from the strict wording of the will, to mold or change its language, such as, by rejecting superfluous, absurd or repugnant words or phrases or restricting them in their application." Id. at 563-64, 406 P.2d at 724. Neither this case, nor any of the cases the Weill court relies on, deal with the alleged invalidity of the testator's will or circumstances involving an unprobated will. Instead, the presumption against intestacy applies where the intention of the testator is clear and can be effectuated by adjusting otherwise inconsistent, contradictory, or unworkable terms. Common sense dictates that the presumption against intestacy does not govern where there has been a testamentary instrument that might be invalidated for lack of capacity or proven to be a product of undue influence. In sum, under the circumstances present in this case, the presumption against

intestacy does not strip Kailieha of standing to contest a testamentary instrument alleged to be a product of undue influence and due to incapacity.

For these reasons and under the facts presented in this case, we conclude that Kailieha is an interested person and has standing to challenge the 1996 Will and Joint Trust. Accordingly, the Probate Court erred in entering summary judgment against her and in favor of the Wong Appellees.

B.    The Motion for Reconsideration

In light of our conclusion that the Circuit Court erred in granting summary judgment against Kailieha, we need not address whether the Circuit Court abused its discretion in denying reconsideration.

V.    CONCLUSION

Therefore, the Probate Court's July 9, 2008 Final Judgment is vacated and this case is remanded for further proceedings.

On the briefs:

Robert J. Crudele
Brian J. De Lima
(Crudele & De Lima)
for Petitioner-Appellant
FRANCES KAILIEHA

Philip J. Leas
Calvert G. Chipchase
Amanda M. Jones
(Cades Schutte)
for Respondents-Appellees
JARRETT N. WONG, JAMIE S.
WONG, JACE T. WONG and
JACELYN WONG

Jamae K.K. Kawauchi
for MOIRA KELEKOLIO-BRIGHT,
Trustee of the Revocable
Living Trust of Jack Wong
Yuen and Lei Young Wong Yuen,
dated April 22, 1996