# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 13, 2016 Session

## IN RE: ESTATE OF J. DON BROCK

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 15-P-245     Jeffrey M. Atherton, Chancellor**

---

**No. E2016-00637-COA-R3-CV-FILED-NOVEMBER 3, 2016**

---

This is an appeal of an order dismissing a will contest for lack of standing. The Contestants sought to challenge the testator's will, alleging that it was the product of fraud and/or undue influence. The Estate introduced multiple prior wills that appeared to be facially valid and properly executed in which all or some of the Contestants were disinherited. The chancery court found that the Contestants would not benefit if the testator's will was set aside and dismissed the contest for lack of standing. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Jerry H. Summers and Marya Lyn Schalk, Chattanooga, Tennessee, and William David Cunningham, Layfayette, Georgia, for the appellants, Melissa Sue Brock Adcock, Krystal Gail Brock Parker, Jennifer Rebecca Brock, Darryl William Brock, and Walter Edward Brock.

Richard W. Bethea, Chattanooga, Tennessee, for the appellees, Sammye M. Brock, W. Norman Smith, and Estate of J. Don Brock.

## OPINION

### I. Background and Procedural History

The Contestants[1] are five adopted children of J. Don Brock ("Mr. Brock") and

---

[1]Melissa Sue Brock Adcock, Krystal Gail Brock Parker, Jennifer Rebecca Brock, Darryl William Brock, and Walter Edward Brock.

Lynne Brock. The Brocks previously adopted two other children, Benjamin Brock and Elizabeth Brock, who are not parties to this will contest. The Brocks divorced in 1993, and Mr. Brock married Sammye Brock on July 4, 1998. Mr. Brock was diagnosed with mesothelioma in May 2012 and died on March 10, 2015.

Prior to his death, Mr. Brock executed a will on October 1, 2013 ("2013 Will") naming Sammye Brock and W. Norman Smith as co-executors of his estate ("The Estate") and explicitly disinheriting each of the Contestants.[2] The Estate submitted Mr. Brock's 2013 Will for probate on March 31, 2015. The Contestants filed their notice of will contest on September 3, 2015, alleging improper execution, lack of testamentary capacity, and fraud and/or undue influence. Specifically, the Contestants challenged the authenticity of Mr. Brock's signature, which appeared only on the last page of the will, and alleged that Mr. Brock lacked testamentary capacity as a result of his illness. Lastly, the Contestants alleged that Sammye Brock committed fraud or exerted undue influence on Mr. Brock by conspiring with her two children, among others, to deprive the Contestants of their "rightful inheritances." The Contestants noted that they were unaware of their disinheritance under the 2013 Will until after Mr. Brock's death.

The chancery court entered an agreed order on September 14, 2015, stating that the Contestants had standing to challenge the 2013 Will and transferring the case to the circuit court. However, the Estate filed a motion in the circuit court on November 12, 2015, alleging that a newly discovered will executed by Mr. Brock in 2012 ("2012 Will") similarly disinherited all of the Contestants and seeking to have the case transferred back to chancery court for a determination of standing. The circuit court granted the motion and transferred the case back to the chancery court on November 24, 2015. On December 22, 2015, the Estate filed a motion to amend or set aside the agreed order, alleging that the 2012 Will disinherited all of the Contestants and that the Contestants therefore lacked standing under Tennessee law.[3] The Contestants then filed a motion to amend their notice of will contest on December 31, 2015, seeking to contest the validity of the 2012 Will as well as additional wills dated 2006, 1998, and 1994. The Contestants noted that while none of them would inherit under the 2012 Will, only two were excluded under the 2006 and 1998 Wills and that only one contestant was excluded under the 1994 Will. If all of the wills were determined to be invalid, all of the Contestants would inherit through intestate succession.

On February 3, 2016, the chancery court heard the pending motions and ruled that the Contestants did not have standing to challenge the 2013 Will and, therefore, that the

---

[2]Although the 2013 Will specifically excluded the Contestants, it also conferred on Sammye Brock a "Limited power of appointment," which allowed her to benefit the Contestants at her sole discretion.
[3]The Estate relied on *Cowan v. Walker*, 96 S.W. 967 (Tenn. 1906), and *Jennings v. Bridgeford*, 403 S.W.2d 289 (Tenn. 1966).

Contestants' motion to amend their notice of will contest was rendered moot. In its oral ruling, the chancery court noted that it was "extremely troubled . . . that the status of the Tennessee law in its current form is harsh[,] neither fair nor equitable, and promotes the potential for fraud by simply creating two wills and [having] one insulate the other." Nevertheless, the court determined that under *Cowan* and *Jennings*, the Contestants lacked standing to challenge the 2013 Will because the 2012 Will was facially valid, not challenged as being improperly executed, and did not leave anything to the Contestants. The Contestants then filed a motion seeking to have the chancery court alter or amend its judgment, arguing that the court improperly relied on a memorandum opinion, that the court's reliance on *Cowan* and *Jennings* was "inapplicable to this case's factual pattern," and that the Contestants discovered a Tennessee Court of Appeals case they believed supported their position. The chancery court heard argument on the motion on March 14, 2016 and entered an order denying the Contestants' motion on March 22, 2016. The Contestants appealed.

## II. Issues

The Contestants present the following issues for review on appeal, which we have slightly reworded:

I.      Whether the trial court erred in granting the Estate's motion to dismiss by relying on an unprobated will that is alleged to have been a product of undue influence.

II.     Whether the Appellants have a constitutional right under both the Tennessee and United States constitutions to challenge wills allegedly procured by fraud and undue influence.

III.    Whether the Limited Power of Appointment in the 2013 and 2012 wills conferred standing on the Appellants.

IV.     Whether the trial court improperly relied on a memorandum opinion in granting the Estate's motion to dismiss.

V.      If the trial court erred in granting the Estate's motion to dismiss, whether it also erred in finding that the motion to amend notice of the will contest was moot.

## III. Discussion

Whether a party seeking to challenge a will has standing to do so presents a

question of law, which we review *de novo* on appeal. *Jolley v. Henderson*, 154 S.W.3d 538, 541 (Tenn. Ct. App. 2004). "Standing to pursue a will contest is limited to those who would benefit under the terms of another will or codicil or the laws of intestate succession if the will contest is successful." *In re Estate of Boote*, 198 S.W.3d 699, 714 (Tenn. Ct. App. 2005). A party seeking to contest a will lacks standing to do so if he or she would not take a share of the decedent's estate under a previous will if the contested will were set aside. *Jennings v. Bridgeford*, 403 S.W.2d 289, 290 (Tenn. 1966). Further, the Tennessee Supreme Court has held that for the limited purpose of establishing lack of standing, the validity of a prior will is not required to be established by probate. *Jennings*, 403 S.W.2d at 90; *Cowan v. Walker*, 96 S.W. 967, 970 (Tenn. 1906). A party has no standing to challenge a will when an earlier will is valid on its face, is not challenged as being improperly executed, and does not leave anything to the party attempting to challenge the later will. *Jennings*, 403 S.W.2d at 291-92. Although not explicitly defined, Tennessee courts have looked to whether a will contains clear errors to determine whether a will is valid on its face. *See generally Jennings*, 403 S.W.2d at 290; *In re Cranor*, No. M1997-00231-COA-R3-CV, 2000 WL 343787 at *3-4 (Tenn. Ct. App. April 4, 2000); *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 221 (Tenn. Ct. App. 1997), *perm. app. denied* (Tenn. June 8, 1998); *In re Estate of Spivey*, No. A0101-9407-CH-00309, 1994 WL 697884 at *2 (Tenn. Ct. App. Dec. 14, 1994).

In *Cowan v. Walker*, the Tennessee Supreme Court held that an heir and next of kin who was left nothing in an earlier but unprobated will has no substantial interest, and therefore no standing, to contest a later will. *Cowan*, 96 S.W. at 970. Sixty years later, in *Jennings v. Bridgeford*, our supreme court re-affirmed the *Cowan* rule and applied it in determining whether a party who was not included in an earlier will had standing to collaterally attack an order probating a subsequent will.[4] *Jennings*, 403 S.W.2d at 291. In that case, the contestant, an admitted "heir at law" who would receive some of the testator's property through intestate succession, sought to challenge the testator's probated will, in which she held no interest, alleging that it was the product of undue influence. *Id.* at 289-90. However, the testator's estate had introduced at trial an earlier will under which the contestant similarly held no interest. Applying *Cowan*, the *Jennings* court determined that "for the limited purpose of evidence of lack of standing, the validity of [an earlier] Will does not have to be established by probate" and held that a party has no standing to challenge a will when an earlier will is valid on its face, is not challenged as being improperly executed, and does not leave anything to the party attempting to challenge the later will. *Id.* at 291-92.

Here, the chancery court applied the rule as stated in *Cowan* and *Jennings*,

---

[4]"While [*Cowan*] involved standing in a direct will contest, we can see no reason to apply it differently to challenge a person's collateral attack on the order probating the subsequent will; in effect, the interest or lack of interest of a contesting party is the same in both instances." *Jennings*, 403 S.W.2d at 291.

determined that the 2012 Will was valid on its face and left nothing to the Contestants, and ruled that the Contestants had no standing to challenge the 2013 Will. On appeal, the Contestants primarily argue that the chancery court misapplied *Cowan* and *Jennings* and also argue that several cases in Tennessee since *Jennings* soften the requirements of both *Cowan* and *Jennings*. The Contestants also attempt to distinguish the case at bar from *Jennings* by noting that that case involved only a single prior will and that the contestant made no attempt to challenge the earlier will.[5] According to the Contestants, the Tennessee appellate court cases cited in their brief are more factually analogous to the case at bar than is *Jennings*. We discuss each in turn.

In *Rassas v. Schaefer*, 1990 WL 263 (Tenn. Ct. App. Jan. 5, 1990), the testator's niece sought to challenge the validity a holographic will submitted for probate on the grounds of undue influence or fraud. The will expressly revoked all previous wills made by the testator and did not leave anything to the niece. *Id.* at *2. An intervening party then introduced two prior wills made by the testator: a written will dated December 6, 1984 that left $10.00 to the niece and a holographic will dated March 19, 1984 that left nothing to the niece. *Id.* at *4. The intervening party challenged the niece's standing and tendered to the court the $10.00 devised to the niece under the December 6, 1984 will. *Id.* The niece alleged that the second will was also a product of undue influence. The circuit court determined that the prior will that left the niece $10.00 was signed by the testator, prepared by an attorney, and duly witnessed. Therefore, the court determined that the niece had no substantial interest in the contest and therefore lacked standing to challenge the will. *Id.* at *5. On appeal, rather than addressing whether the niece had standing, the *Rassas* court discussed whether the circuit court erred by exercising original jurisdiction over the issue of standing. After a detailed analysis, the court determined that the "question of standing should have been decided by the Probate Court" and that the circuit court had appellate, rather than original jurisdiction over that issue. *Id.* at *9. In making its determination, the *Rassas* court analyzed whether "exceptional circumstances" justified a deviation from its rules of jurisdiction. Among them, the court considered circumstances that it noted were not present in any authority it examined. Of particular note, the court stated that

1. The last will of the deceased was offered for probate, and a contest was filed.
2. Proponent's response to the contest was that a previous will had bequeathed to contestant only $10.00 which was tendered into court.
3. Contestant's response was that the previous will was invalid.
d. Proponent's rejoinder was that there was yet another previous will which was exhibited to the Probate Court.

---

[5]The contestant in *Jennings* asserted that the validity of the prior will had not been proven but did not challenge the will as being invalid. *Jennings*, 403 S.W.2d at 290.

e. There was no request for probate of either of the two previous wills, and no formal contest was made as to them. However, the determination of validity of one or both of the previous wills was indispensible to the determination of the standing of the contestant to contest the will which had been propounded for probate.

*Id.* The court provided no citation to support its assertion that "the determination of the validity of one or both of the previous wills was indispensible to the determination of the standing of the contestant." The court vacated the circuit court's decision and remanded the case for standing to be determined by the probate court. *Id.*

Here, the Contestants argue that *Rassas* outlines the procedure for standing determinations with multiple wills when more than one will is challenged as being the product of undue influence. Additionally, the Contestants argue that *Rassas* demonstrates that a court is not restricted to what appears on the face of the prior will in determining the standing of a contestant. We disagree. First, the holding in *Rassas* was limited to whether the circuit court or probate court had original jurisdiction over the issue of standing. Other statements made therein, while potentially instructive, are ultimately dicta. Second, our supreme court, in *Jennings*, unequivocally stated that for the limited purpose of establishing standing, the validity of a prior will is not required to be established by the probate court. *Jennings*, 403 S.W.2d at 290. While the Contestants argue that the case at bar is distinguishable from *Jennings* in that the contestant in *Jennings* did not challenge the prior will, we note that the language used in *Jennings* implicitly excludes challenges other than a challenge that the prior will was improperly executed.

The Contestants similarly point to this Court's decision in *In re Cranor*, No. M1997-00231-COA-R3-CV, 2000 WL 343787 (Tenn. Ct. App. Apr. 4, 2000), to support their assertion that a court need not limit its inquiry to a facial examination of the immediately prior will. In that case, thirteen of the testator's heirs sought to challenge the testator's will, which did not include them. The proponents sought to dismiss the challenges to the will on the ground that the contestants lacked standing because they were similarly not included in two of the testator's earlier wills. *Id.* at *1. The contestants responded by challenging the validity of the earlier wills. Among other arguments, the contestants argued that the second will left the residuary estate to a trust that had not been legally established when the will was signed and that the first will distributed real and personal property in accordance with a hand-written document called "Schedule A," which was not attached to the will. The trial court then concluded that the contestants had standing to challenge the testator's will, which this Court affirmed on appeal after concluding that the record contained sufficient evidence "to provide factual support for the contestants' arguments that [the testator's] first and second wills were

6

suspect either in whole or part." *Id.* at \*2-4. The *Cranor* court did not cite *Cowan* or *Jennings* but ultimately followed the rule of those cases. Although in looking back to the second and first wills the Court did not use the phrase "facially invalid," the Court properly recognized that each of the wills contained flaws that caused them to be invalid on their face. Under *Jennings*, two facially invalid prior wills would result in the contestants having standing to challenge the will submitted to probate. Accordingly, the result in *Cranor* does not advance the cause of the Contestants in the case at bar.

The Contestants also argue that the case of *Jolley v. Henderson*, 154 S.W.3d 538 (Tenn. 2004), provides authority for the proposition that a court may look beyond the face of multiple prior wills when determining standing. In *Jolley*, the contestants appealed the chancery court's determination that they did not have standing to challenge their father's will.[6] *Id.* at 539. The father disinherited each of the contestants in wills executed in 1998 and 1997. The contestants then pointed to wills made in 1985, 1977, and 1975 in which they each received $10, arguing that their inclusion in those wills gave them standing to challenge the 1998 will. On appeal, the contestants apparently argued that they had a "substantial interest" in the earlier wills that is sufficient to give rise to standing. The *Jolley* court noted that the contestants were disinherited in both the 1998 and 1997 wills and disagreed with the contestants' assertion that they had a substantial interest in the earlier wills, concluding that $10 was nothing more than a *de minimis* interest. The *Jolley* court then affirmed the decision of the trial court. *Id.* at 543. *Jolley* cited *Cowan* for the proposition that "a contestant must have a substantial interest which is to be served by his [or her] contest" but did not cite *Jennings*. *Id.* (quoting *Cowan v. Walker*, 96 S.W. 967, 970 (Tenn. 1906)).

In the case at bar, the Contestants argue that the 2006 Will, 1998 Will, and 1994 Will provide them with more than a *de minimis* interest and should result in them having standing to challenge the 2013 Will. However, the *Jolley* court did not hold that if the contestants had more than a *de minimis* interest that they would have standing to challenge the will despite not being included in a prior will. Rather, the *Jolley* court addressed the contestants' argument and affirmed the decision of the trial court, which apparently based its decision on the contestants' lack of inclusion in the 1997 will. As with *Cranor*, *Jolley* provides little to materially advance the Contestants' argument in this case.

The Contestants likewise attempt to distinguish two other cases, *Keasler v. Estate of Keasler*, 973 S.W.2d 213 (Tenn. Ct. App. 1997), *perm. app. denied* (Tenn. June 8, 1998), and *In re Estate of Spivey*, No. A0101-9407-CH-00309, 1994 WL 697884 (Tenn.

---

[6]The trial court, in *Jolley,* noted that "[u]nder the undisputed facts, [the Contestants] would take nothing under the prior will of [the Testator] dated May 15, 1997, which would govern the distribution of the estate if the contested will were held to be invalid." *Jolley*, 154 S.W.3d at 541.

Ct. App. Dec. 14, 1994), from the facts of this case. In each of those cases, this Court held that the contestant lacked standing to challenge a will because they were excluded from a prior will that was determined to be facially valid and properly executed. *Keasler*, 973 S.W.2d at 222; *Spivey*, 1994 WL at *1-2. With respect to *Keasler*, the Contestants note that the *Keasler* court included in its remarks that "there are no allegations of undue influence by others upon [the testator] in regard to the execution of the 1984 will." *Keasler*, 973 S.W.2d at 221. The Contestants argue that this remark indicates that if there were allegations of undue influence that the Court would have looked beyond a facial examination of the prior will. As we stated with respect to the Court's decision in *Jolley*, the Contestants' preferred interpretation is not the holding of *Keasler*. Moreover, we are bound to follow the precedent set by our supreme court, which in this case is *Cowan* and *Jennings*, and we cannot carve out exceptions that do not currently exist in Tennessee law.

With respect to *In re Estate of Spivey*, the Contestants argue that the contestant in that case failed to challenge the earlier will. Although the Contestants are correct in noting that distinguishing fact, the *Spivey* court stated that the earlier will was "in the record and it appears to be executed according to the law." *Spivey*, 1994 WL at *2. Although not specifically challenged by the contestant in that case, it is clear that the *Spivey* court applied *Jennings* in the same fashion[7] it would have if the contestant had challenged the earlier will. Ultimately, that distinguishing fact between *Spivey* and this case is one without distinction.

Next, the Contestants argue that applying *Cowan* and *Jennings* in this case produces a result that is unfair and contrary to justice.[8] Specifically, the Contestants allege that the rule in *Jennings* allows a bad actor to insulate a fraudulent will that excludes a party by subsequently creating an identical or virtually identical fraudulent will. While the Estate argues that the Contestants cite no authority to demonstrate that

---

[7] The Court wrote that "The chancellor's decision was based on . . . well-established principles. First, a person to whom nothing is left by an earlier unprobated will, which on its face appears to be executed in due form, has no standing to contest the probate of a later will." *Spivey*, 1994 WL at *1 (citing *Cowan v. Walker*, 96 S.W 967 (Tenn. 1906) and *Jennings v. Bridgeford*, 403 S.W.2d 289 (Tenn. 1966)).

[8] Among other arguments, the Contestants assert that both the Tennessee Constitution and United States Constitution provide for a right of access to the courts. However, our supreme court has noted that "[g]rounded upon 'concern about the proper–and properly limited–role of the courts in a democratic society,' the doctrine of standing precludes courts from adjudicating 'an action at the instance of one whose rights have not been invaded or infringed.'" *American Civil Liberties Union v. Darnell*, 195 S.W.3d 612, 619-20 (Tenn. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) and *Mayhew v. Wilder*, 46 S.W.3d 760, 767 (Tenn. Ct. App. 2001). Under *Cowan* and *Jennings*, the Contestants in this case do not have rights that have been invaded or infringed. Accordingly, the Contestants do not have a constitutional right to challenge the 2013 Will and their right of access to the courts has not been unconstitutionally limited.

8

this has ever occurred, we agree with the Contestants that the *Jennings* rule appears to be susceptible to this kind of abuse. Moreover, Tennessee law does not appear to provide a mechanism by which a contestant can challenge multiple prior wills when the contestant is excluded from those wills unless the prior wills are facially invalid or improperly executed.

The Contestants point to several decisions from foreign jurisdictions[9] to highlight what they perceive to be the harsh logic of Tennessee's standing rule in will contests. Of particular note are the cases of *Marr v. Barnes*, 267 P. 9 (Kan. 1928) and *Stephens v. Brady*, 73 S.E.2d 182 (Ga. 1952), which were decided after *Cowan* but before *Jennings*. In *Marr*, the Kansas Supreme Court does not explicitly reference *Cowan* but stated "[h]ow an *unprobated* will could be said to be a *valid* will and used in litigation as a *valid* will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow." *Marr*, 267 P. at 10. The *Marr* court further concluded that an unprobated will is "merely 'a scrap of paper'" until it is probated. *Id.* (citation omitted). The Georgia Supreme Court, in *Stephens*, considered both *Cowan* and *Marr* and determined that *Marr's* reasoning with respect to whether an unprobated will could prejudice an heir was "well stated." *Stephens*, 73 S.E.2d at 184.

Of course, standing is a judicially created doctrine. *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976). As such, the Tennessee Supreme Court is free to re-visit its rulings in *Cowan* and *Jennings*, and we encourage an examination of their practical application. Like the trial court, we are troubled that standing could potentially be used by a wrongdoer to insulate his or her wrongdoing from being challenged. What stops a wrongdoer, who procures a will by either undue influence or other fraudulent means, from procuring a second will in order to insulate the last will from review by the courts? Perhaps the Kansas and Georgia courts fashioned a solution worthy of examination by our own supreme court, or perhaps another solution exists to guard against the abuse of the rule of standing. As an intermediate appellate court, however, fashioning such a solution is not within our purview.

Regardless of the opinions of other jurisdictions about this issue and regardless of our own concern with respect to the potential for abuse, "we are bound to follow [Tennessee Supreme Court decisions] if they are on point." *Publix Super Mkts., Inc. v. Tenn. Dep't of Labor & Workforce Dev.*, 402 S.W.3d 218, 230 (Tenn. Ct. App. 2012). *Cowan* and *Jennings* are on point and control our decision. Here, all of the Contestants are excluded from the 2012 Will, which appears to be valid on its face and is not

---

[9]*Stephens v. Brady*, 73 S.E.2d 182 (Ga. 1952); *Marr v. Barnes*, 267 P. 9 (Kan. 1928); *In re Jack Wong and Lei Young Wong Yuen Revocable Living Trust*, 312 P.3d 1240 (Haw. Ct. App. 2013); *In re Estate of Schlenker*, 789 N.E.2d 456 (Ill. App. Ct. 2003).

challenged as being improperly executed. Accordingly, under the rule provided in *Cowan* and in *Jennings*, the Contestants do not have standing to challenge the 2013 Will.

Finally, the Contestants also argue that while they were excluded from inheriting directly under the 2013 and 2012 Wills, the wills provide the possibility for them to take a substantial amount of money under either will if Sammye Brock exercises her Limited Power of Appointment. The Contestants assert that their inclusion in the Limited Power of Appointment gives them standing to challenge the Wills. The Contestants provide no authority for this position other than an opinion of this Court designated as a "memorandum opinion"[10] not to be cited or relied on for any reason in any unrelated case.[11] Furthermore, the clause in both the 2013 Will and 2012 Will granting Sammye Brock a limited power of appointment states that it was Mr. Brock's "intention to specifically exclude" each of the Contestants unless Sammye Brock chose to exercise her Limited Power of Appointment. Simply put, the Contestants do not "benefit under the terms" of either Will. *In re Estate of Boote*, 198 S.W.3d 699, 714 (Tenn. Ct. App. 2005). Under the terms of the Limited Power of Appointment, whether the Contestants benefit at all is in the sole discretion of Sammye Brock. Accordingly, the Limited Power of Appointment in the 2013 Will and 2012 Will does not confer on the Contestants standing to challenge either will. Having concluded that the chancery court did not err in determining that the Contestants lacked standing to challenge the 2013 Will, any remaining issues are pretermitted.

## IV. Conclusion

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellants, Melissa Sue Brock Adcock, Krystal Gail Brock Parker, Jennifer Rebecca Brock, Darryl William Brock, and Walter Edward Brock, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

---

[10]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[11]As one of their issues raised on appeal, the Contestants argued that the trial court erred in relying on a memorandum opinion in reaching its decision on standing. After reviewing the entire record, including the transcripts of the proceedings below, we conclude that the trial court did not rely on a memorandum opinion in reaching its decision.