IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2017 Session

**IN RE: ESTATE OF J. DON BROCK**

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Hamilton County**
**No. 15-P-245          Jeffrey M. Atherton, Chancellor**

———————————————————

**No. E2016-00637-SC-R11-CV**

———————————————————

We granted permission to appeal to determine whether the contestants—five of the decedent's seven children—have standing to bring this will contest. The contestants were expressly disinherited by a will dated October 1, 2013, and admitted to probate and by a prior will, dated October 11, 2012, produced during this litigation. The trial court dismissed this will contest for lack of standing, concluding that two prior decisions of this Court—Cowan v. Walker, 96 S.W. 967 (Tenn. 1906) and Jennings v. Bridgeford, 403 S.W.2d 289 (Tenn. 1966)—required the dismissal. The Court of Appeals affirmed. Although we agree with the courts below that Cowan and Jennings include imprecise language that could be viewed as establishing a broad, bright-line rule that persons disinherited by facially valid successive wills lack standing, we conclude that those decisions are factually distinct and did not announce such a broad rule. We reaffirm the general rule, long recognized in Tennessee, that to establish standing a contestant must show that he or she would be entitled to share in the decedent's estate if the will were set aside or if no will existed. The contestants here have satisfied this requirement by showing that they would share in the decedent's estate under the laws of intestacy and under prior wills. Thus, the judgments of the trial court and Court of Appeals dismissing this will contest for lack of standing are reversed, and this matter is remanded to the trial court for further proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the**
**Court of Appeals and Trial Court Reversed; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Jerry H. Summers and Marya Lyn Schalk, Chattanooga, Tennessee, and William David Cunningham, Lafayette, Georgia, for the appellants, Melissa Sue (Brock) Adcock, Krystal Gail (Brock) Parker, Jennifer Rebecca Brock, Darryl William Brock, and Walter Edward Brock.

Richard W. Bethea, Jennifer Kent Exum, Cameron A. Kapperman, Nathan L. Kinard, Chattanooga, Tennessee, for the appellees, Sammye M. Brock and W. Norman Smith, Co-Executors of the Estate of J. Don Brock.

John R. Branson, Memphis, Tennessee, for the amici curiae, Brenda Dattel Meece and Lisa Ann Dattel.

Walter W. Bussart, Lewisburg, Tennessee, for the amicus curiae, David Edmundson Rackley.

Albert W. Secor, Hixson, Tennessee, amicus curiae.

## OPINION

### I.  Factual Background[1]

Dr. J. Don Brock ("Dr. Brock"), a resident of Hamilton County, Tennessee, was diagnosed with mesothelioma in May 2012, and died on March 10, 2015, leaving a sizeable estate.[2]  Dr. Brock was survived by his spouse, Mrs. Sammye Sprouse Brock ("Mrs. Brock"), by his seven children that he and his former wife adopted during their marriage of more than thirty years, five of whom were biological siblings, and by his two stepdaughters, Mrs. Brock's children from a prior marriage.

---

[1] This matter was dismissed for lack of standing before trial.  Background facts are gleaned from documents that have been filed in the will contest and are included in the record on appeal.  Our recitation of these facts does not amount to a determination of their accuracy or evidentiary weight.

[2] Dr. Brock held a Ph.D. in mechanical engineering.  He founded Astec Industries, Incorporated ("Astec Industries") in 1972 and remained its CEO until 2014.  By 1995, Astec Industries had grown into a "successful multi-national, multi-division corporation involved in the manufacturing and sale of asphalt manufacturing plants, paving equipment, and other related equipment and products."  Astec Industries stock has been traded publicly on the NASDAQ stock exchange since 1986.

On March 31, 2015, Dr. Brock's attorney filed a petition in the Chancery Court of Hamilton County ("Probate Court")[3] for testate administration of Dr. Brock's October 1, 2013 Will ("2013 Will"). In accordance with paragraph two of the 2013 Will, the Probate Court named Mrs. Brock and W. Norman Smith as co-executors of Dr. Brock's estate (collectively "Proponents"), and letters testamentary were issued to them on April 6, 2015.

The 2013 Will divided Dr. Brock's estate ("Estate") among Mrs. Brock, Dr. Brock's stepdaughters, Christie Sprouse Gleeson and Devin LeAnn Sprouse, and Dr. Brock's eldest two children from his first marriage—Elizabeth Foster Brock and Benjamin Garrison Brock. The 2013 Will expressly excluded Dr. Brock's five other children from his first marriage—biological siblings Walter Edward Brock, Jennifer Rebecca Brock, Darryl William Brock, Melissa Sue Brock Adcock, and Krystal Gayle Brock Parker (collectively "Contestants"). As for the Contestants, the 2013 Will treated them as "having predeceased [Dr. Brock] without surviving descendants."

On September 3, 2015, the Contestants filed a notice of will contest as to the 2013 Will, alleging improper execution or attestation, lack of testamentary capacity, and fraud and/or undue influence. Specifically, the Contestants challenged the authenticity of Mr. Brock's signature, which appeared only on the last page of the 2013 Will, alleging that Mrs. Brock had signed Dr. Brock's name for decades, having worked at Astec Industries as his receptionist and assistant for twenty years before their marriage in 1998. The Contestants further alleged that the attesting witnesses to the 2013 Will "were not disinterested witnesses" but were officers or employees of Astec Industries with a financial interest in the company. The Contestants pointed out that the first twenty-four pages of the 2013 Will were not signed or initialed, including the pages that disinherited the Contestants. The Contestants also averred that Dr. Brock lacked testamentary capacity, stating that the 2013 Will had purportedly been prepared and signed more than a year after Dr. Brock had been diagnosed with mesothelioma in 2012 and after he had undergone aggressive treatments for the disease. Lastly, the Contestants alleged fraud and undue influence. The Contestants claimed that Mrs. Brock as well as Elizabeth and Benjamin Brock had confidential relationships with Dr. Brock and used their relationships to exert undue influence over him in the procurement of the 2013 Will. The Contestants claimed that Mrs. Brock had been Dr. Brock's mistress, receptionist, and assistant for approximately twenty-four years before their 1998 marriage. After the marriage, the Contestants claimed, Mrs. Brock acted to isolate Dr. Brock from the Contestants and interfere with their ability to see or speak with him. The Contestants alleged that Mrs. Brock had fraudulently conspired with her own daughters, with

---

[3] The Chancery Court for Hamilton County served as the probate court. See Tenn. Code Ann. § 16-16-201(a) (2009 & Supp. 2017).

- 3 -

Benjamin and Elizabeth Brock, and with others to deprive them "of their rightful inheritances" by exerting undue influence over Dr. Brock while he was under the physical and mental disabilities caused by mesothelioma. The Contestants alleged that they were unaware Dr. Brock had disinherited them until the Proponents produced the 2013 Will after his death, and they claimed that their disinheritance conflicts with statements Dr. Brock made indicating that they would be provided for after his death.

On September 14, 2015, the Contestants and the Proponents entered an agreed order acknowledging that the Contestants had standing to challenge the 2013 Will and transferring the case to the Circuit Court for Hamilton County ("Circuit Court").[4] Subsequently, however, counsel for the Proponents provided the Contestants with signed copies of the following four wills dated before Dr. Brock's 2013 Will: (1) an October 11, 2012 Will ("2012 Will); (2) a December 27, 2006 Will ("2006 Will); (3) an April 28, 1998 Will ("1998 Will"); and (4) a March 18, 1994 Will[5] ("1994 Will").[6] Additionally, on November 12, 2015, the Proponents filed a motion asking the Circuit Court to transfer the case back to the Probate Court for a determination of the Contestants' standing.

On November 24, 2015, the Circuit Court granted the motion, and less than a month later, December 22, 2015, the Proponents filed in the Probate Court a motion to amend or set aside the agreed order recognizing the Contestants' standing and a motion to dismiss the Contestants' will contest action for lack of standing. As support for this motion, the Proponents attached a copy of Dr. Brock's 2012 Will, which also disinherited all the Contestants. The Proponents argued that under this Court's decisions in Cowan and Jennings, a party disinherited by facially valid successive wills lacks standing to bring a will contest challenging the most recent will.

---

[4] See Tenn. Code Ann. § 16-10-103 (2009) ("The circuit court has jurisdiction to try and determine all issues made up to contest the validity of last wills and testaments."); Tenn. Code Ann. § 32-4-109 (2015) ("Any court of record that has probate jurisdiction, whether a chancery court or other court of record established by private or public act, has concurrent jurisdiction with the circuit court to conduct a trial upon the validity of a will in the manner and to the extent prescribed in this chapter. Notwithstanding law to the contrary, prior to the certification of the fact of the contest pursuant to § 32-4-101(a)(2), the contestant shall elect, in the notice of contest, either the circuit court or the chancery court, or other court of record having such concurrent jurisdiction, to conduct a trial upon the validity of the will.").

[5] Although the 1994 Will was dated March 18, 1994, the affidavit attached to it and purporting to prove it was not signed until March 22, 1994.

[6] Counsel for the Proponents also turned over unsigned copies of a 1983 Will and a 1997 Codicil to the 1994 Will.

On December 31, 2015, the Contestants moved to expand the scope of their will contest to include the 2012 Will, the 2006 Will, the 1998 Will, and the 1994 Will, in addition to the 2013 Will. The Contestants asserted that, while none of them would inherit under the 2012 Will, only two of them were excluded under the 2006 and 1998 Wills and only one of them was excluded under the 1994 Will. The Contestants additionally pointed out that, as Dr. Brock's children, they would inherit under the laws of intestacy should all of the wills be declared invalid. The Contestants argued that Cowan and Jennings are factually distinct and should not be interpreted as announcing a broad, bright-line rule that persons disinherited by facially valid successive wills lack standing to bring a will contest.

The Probate Court held a hearing on the motions on February 3, 2016, set aside the agreed order recognizing the Contestants' standing, ruled, based on Cowan and Jennings, that the Contestants lacked standing, and dismissed their will contest. But the Probate Court did so reluctantly and was "extremely troubled . . . that the status of the Tennessee law in its current form is harsh[,] neither fair nor equitable, and promotes the potential for fraud by simply creating two wills and [having] one insulate the other." Having ruled that the Contestants lacked standing, the Probate Court declined to rule on the Contestants' motion to amend their will contest, finding it moot. The Contestants filed a motion to alter or amend, again arguing that Cowan and Jennings are factually distinct. The Probate Court denied the motion, and the Contestants appealed.

The Court of Appeals affirmed the Probate Court's judgment. In re Estate of Brock, No. E2016-00637-COA-R3-CV, 2016 WL 6503696, at *7 (Tenn. Ct. App. Nov. 3, 2016), perm. app. granted (Mar. 8, 2017). But, like the Probate Court, the Court of Appeals also was "troubled that standing could potentially be used by a wrongdoer to insulate his or her wrongdoing from being challenged." Id. at *6. Nevertheless, the Court of Appeals concluded that Cowan and Jennings controlled and required it, as an intermediate appellate court, to affirm the judgment of dismissal. Id. We granted the Contestants' application for permission to appeal.

## II. Standard of Review

Whether a contestant has standing to bring a will contest is a threshold question of law separate and apart from the merits of the will contest itself. See Tenn. Code Ann. § 32-4-101(a) (2015) ("If the validity of any last will or testament, written or nuncupative, is contested, then the court having probate jurisdiction over that last will or testament must enter an order sustaining or denying the contestant's right to contest the will."); Crocker v. Balch, 55 S.W. 307, 307 (Tenn. 1900); see also In re Estate of Boote, 198 S.W.3d 699, 714 (Tenn. Ct. App. 2005) ("As soon as the probate court is made aware of a contest, it must halt the . . . probate proceedings and determine whether the person seeking to contest the will has standing to pursue a will contest."); Jolley v. Henderson,

154 S.W.3d 538, 542–43 (Tenn. Ct. App. 2004). This Court reviews de novo the determination of questions of law and affords no presumption of correctness to lower court rulings. Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013).

## III. Analysis

The province of courts "is to decide, not advise, and to settle rights, not to give abstract opinions." Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty., 301 S.W.3d 196, 203 (Tenn. 2009) (quoting State v. Wilson, 70 Tenn. 204, 210 (1879) (internal quotation marks omitted)). To ensure that judicial power remains within these constraints, Tennessee courts utilize justiciability doctrines. Id. at 202–03. The justiciability doctrine at issue in this appeal—standing—ensures that a particular litigant has a sufficiently personal stake in litigation to warrant an adjudication. Am. Civil Liberties Union of Tenn. v. Darnell, 195 S.W.3d 612, 619 (Tenn. 2006); Knierim v. Leatherwood, 542 S.W.2d 806, 808 (Tenn. 1976). Establishing standing does not require a litigant to show a likelihood of success on the merit[s]" of the underlying claim. Am. Civil Liberties Union of Tenn., 195 S.W.3d at 620.

This appeal, of course, requires us to consider the standing requirement in the context of a will contest. A will contest allows a court to make a determination, once and for all, about how a decedent's estate should be distributed. Jones v. Witherspoon, 187 S.W.2d 788, 791 (Tenn. 1945); see In re Estate of Barnhill, 62 S.W.3d 139, 143 (Tenn. 2001). The procedures governing the probate and contest of wills originally derived from the ecclesiastical courts of England but are now governed by statute. Petty v. Call, 599 S.W.2d 791, 793 (Tenn. 1980). As a result, the standing requirement for will contests has been included in will contest statutes in "all but a handful of states." Eunice L. Ross & Thomas J. Reed, Will Contests § 3:2 (2d ed. June 2017 Update) [hereinafter Will Contests]. These statutes "are divided into two classes: (1) those which confer [standing] on anyone who is 'interested' or 'aggrieved' by the probate of a will; and (2) those which have no statutory standard for standing." Id. (footnotes citing statutes omitted).[7] Statutes of the first type, which expressly confer standing on "interested" or "aggrieved" persons, have generally been interpreted as requiring a showing of "a direct pecuniary interest in

---

[7] The Uniform Probate Code falls into the first class by conferring standing to bring a will contest on any "interested party" but goes further by defining that term as including the decedent's surviving spouse, children and heirs, as well as devisees and personal representatives under former wills. See Unif. Probate Code § 3-401 (stating that "[a] formal testacy proceeding," the term the Uniform Probate Code uses to refer to "litigation to determine whether a decedent left a valid will," "may be commenced by an *interested person* filing a petition as described in Section 3-402(a)") (emphasis added); Unif. Probate Code § 1-201 (defining "'Interested person'" as including "heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against" a decedent's estate and "persons having priority for appointment as personal representative"); see also Will Contests § 3:3 (discussing standing under the Uniform Probate Code).

denying probate to the will, because he or she would receive a greater share of the decedent's assets if the will were not probated."  Id. (footnote citing cases omitted). Statutes that do not include a specific standard have nevertheless been interpreted in the same manner as statutes that do.  Id.  As a result, "[t]here is little difference between the [S]tates on the practical meaning of standing to object to probate of a will."  Id.

The law of Tennessee well illustrates this point.  As already explained, standing is a threshold issue in a will contest, and the probate court is statutorily required to "enter an order sustaining or denying the contestant's right to contest the will."  Tenn. Code Ann. § 32-4-101(a).  Although our statute does not include either the word "interested" or the word "aggrieved," prior Tennessee decisions have explained that a contestant must show that he or she would be entitled to share in the decedent's estate if the will were set aside or if no will existed.  See, e.g., Warmath v. Smith, 279 S.W.2d 257, 258 (Tenn. 1955) ("Only such persons as would be entitled to share in the real and personal estate of decedent, if there were no will, or if the will was set aside, are entitled to impeach its validity."); Cowan, 96 S.W. at 970 (stating that to establish standing "a contestant must have a substantial interest which is to be served by his [or her] contest"); Bowers v. McGavock, 85 S.W. 893, 896 (Tenn. 1905) ("No one can question the validity of a will, or any provision in it, unless he stands in such relation to the testator that, in the event the provision is invalid, he will be entitled to an interest in the property involved in the controverted provision."); Ligon v. Hawkes, 75 S.W. 1072, 1073 (Tenn. 1903) ("No one except those directly interested in the estate of a decedent has the right to call in question the validity of his or her will."); In re Estate of Boote, 198 S.W.3d at 714 ("Standing to pursue a will contest is limited to those who would benefit under the terms of another will or codicil or the laws of intestate succession if the will contest is successful."); Jolley, 154 S.W.3d at 543 (stating that to establish standing a contestant must have a "substantial interest which is to be served by" the contest and concluding that a ten dollar bequest is "a de minimis interest" and insufficient to establish standing); In re Estate of West, 729 S.W.2d 676, 677–78 (Tenn. Ct. App. 1987) ("[I]t is well settled in this [S]tate that before [a contestant] may go forward with a will contest he must show that he would take a share of the decedent's estate if the probated will were set aside."); Allred v. Allred, 5 Tenn. App. 200, 201 (Tenn. Ct. App. 1927) ("The general rule is that any person who would have an interest in the estate, should the will be denied probate, may contest the will whether his interest is that of an heir, or that of a legatee or devisee under a prior will superseded by the later will.").  On the other hand, "[a] stranger to an estate, one who would take nothing if the will was set aside," lacks standing to bring a will contest. Warmath, 279 S.W.2d at 260 (citing Wynne v. Spiers, 26 Tenn. (7 Hum.) 394, 407 (1846)); see also Bowers, 85 S.W. at 896 ("It has been held by this [C]ourt that a stranger will not be permitted to contest the execution of a will . . . ."); Ligon, 75 S.W. at 1073 ("A stranger will not be permitted to disturb the existing probate.").

In this case, the Contestants' standing was not initially contested, and an agreed order acknowledging standing was entered. This is understandable, as Contestants clearly would have standing if the only testamentary document at issue were the 2013 Will admitted to probate. As Dr. Brock's children, all of the Contestants would take a share of his estate under the laws of intestate succession if the 2013 Will were set aside and no other will admitted to probate. Tenn. Code Ann. § 31-2-104(a)–(b)(1) (2015 & 2017 Supp.). Thus, the question presented in this appeal is whether, based on Cowan and Jennings, the Contestants lack standing because the facially valid signed copy of the 2012 Will that immediately preceded the 2013 Will also disinherited them. After carefully considering Cowan and Jennings, we agree with the Contestants that those decisions are factually distinct and do not deprive the Contestants of standing to bring this will contest.

We begin with Cowan. There, the decedent's will of November 30, 1901 ("1901 Will") was submitted for probate. Cowan, 96 S.W. at 967. The 1901 Will disinherited the decedent's nephew, who would have received one-twelfth of the decedent's estate under the laws of intestacy. Id. at 968. The decedent's nephew contested the 1901 Will, alleging undue influence and lack of testamentary capacity. Id. at 967. The proponents of the 1901 Will denied these allegations and also asserted that the nephew lacked standing because an earlier will, dated September 22, 1900, and its April 10, 1901 codicil (collectively "1900 Will") had also disinherited the decedent's nephew. Id. at 968. The proponents of the 1901 Will produced "uncontroverted testimony" of the "due legal execution and publication" of the 1900 Will and of "the fact that, at the time of the execution [of the 1900 Will], the [decedent] was of sound mind and disposing memory." Id. The trial court excluded this "uncontroverted testimony" and allowed the nephew's will contest action to proceed. Id. But the Cowan Court reversed, concluding that the trial court had erred by excluding the 1900 Will and the evidence of its validity. Id. at 971. In doing so, the Cowan Court acknowledged that the nephew, "being one of the next of kin of the deceased," had "prima facie" standing to contest the 1901 Will. Id. at 970. Nevertheless, the Cowan Court explained, the nephew's "prima facie" right had been "met and destroyed" by the 1900 Will disinheriting the nephew because it was "*confessedly valid in every respect*." Id. at 970–71 (emphasis added). Based on the uncontroverted evidence of the 1900 Will's validity, it was "clear" to the Cowan Court that the decedent's nephew "had no substantial interest" in the decedent's estate and therefore lacked standing to maintain the will contest. Id. at 971.

As the discussion in Cowan reveals, the contestant had not challenged the validity of the 1900 Will and its validity actually was established in the trial court by "uncontroverted testimony." Id. at 969. Given these facts, the Cowan Court's holding that the nephew lacked standing to challenge the 1901 Will is unremarkable. Even if the nephew had succeeded in contesting the 1901 Will, he still would not have been entitled to any part of the decedent's estate because the 1900 Will, "confessedly valid in every

respect" and proven so with "uncontroverted testimony," also had disinherited him. Id. at 970–71.

The facts of Jennings are even more distinguishable. Jennings involved a collateral attack by an heir of the decedent upon a judgment rendered in a *prior* will contest case. 403 S.W.2d at 289. The prior will contest involved two wills, and "the sole question was whether a paper writing, dated February 13, 1953, or a paper writing, dated March 31, 1961, was the Last Will and Testament of [the decedent]." Id. at 289–90. The 1961 will was contested on the grounds of the decedent's mental incompetence, duress, and undue influence. Id. at 289. "A jury found in favor of the writing dated March 31, 1961;" and the Court of Appeals affirmed the jury's decision in a reported decision. Id. (citing Williams v. Bridgeford, 383 S.W.2d 770 (Tenn. Ct. App. 1964)). Nevertheless, an heir of the decedent filed a collateral attack upon the judgment the Court of Appeals had affirmed. Id. at 291. The heir argued that the judgment in the prior will contest had been procured by fraud because the person who submitted the will for probate knew the decedent did not have the required mental capacity to make a will. Id. at 290. The trial court rejected the heir's collateral attack, and the Jennings Court affirmed. Id. at 293. The Jennings Court emphasized that the validity of the March 31, 1961 will as the decedent's last will and testament had been judicially established in the prior will contest and that the heir had failed to prove extrinsic fraud—a necessary showing to any successful collateral attack on a final judgment. Id. at 292–93. Thus, the validity of the will challenged by a collateral attack in Jennings had already been judicially established in a prior will contest.

As the foregoing discussion illustrates, in both Cowan and Jennings the validity of wills disinheriting those who brought the legal actions had already been judicially established either by admission and uncontroverted evidence, as in Cowan, or by a final judgment in a prior will contest, as in Jennings. The same certainly cannot be said of this case. No court has made any determination as of yet about the validity or invalidity of any of Dr. Brock's wills. Thus, Cowan and Jennings simply do not control the outcome of the standing issue in this appeal. The Proponents point out, correctly, that Cowan[8] and Jennings[9] contain language that could be viewed as creating a broad, bright-line rule that

---

[8] The Court in Cowan stated: "[W]e think this prima facie case [of standing] is necessarily met and destroyed by the existence of the earlier, valid, but unprobated, will. This leaves him a stranger to the estate, and as such without any right of contest." 96 S.W. at 970.

[9] The Jennings Court stated:

We, therefore, hold that where a Will, which on its face is valid and *is not challenged as being improperly executed*, and which leaves nothing to one who is attempting to attack

- 9 -

persons disinherited by *facially valid* successive wills lack standing.[10]  But, a review of the facts reveals that the wills involved in Cowan and Jennings had already been judicially determined to be valid in all respects, not only facially valid.[11]  We therefore decline to perpetuate an erroneously broad interpretation of Cowan and Jennings and hold that their discussion of successive wills must be understood within and confined to the factual circumstances in which it originated.  State v. Lancaster, 105 S.W. 858, 862 (Tenn. 1907) ("Decisions must be construed in the light of the question with which the court is dealing, and of the facts before the court.").

---

> collaterally the probate of a subsequent Will, that person has no interest entitling her to set aside the probate of the later Will.

Id. at 291 (emphasis added).

[10]  We do not agree with the Proponents, however, that the Court of Appeals applied such a broad rule in Keasler v. Estate of Keasler, 973 S.W.2d 213 (Tenn. Ct. App. 1997).  There, the decedent's son filed an action contesting her 1986 will, alleging undue influence and lack of testamentary capacity.  The proponents of the will denied these claims and also alleged lack of standing based on the decedent's 1984 will, which also left nothing to the decedent's son.  The trial court granted summary judgment to the proponents of the will on the claims of undue influence and lack of testamentary capacity to make the 1986 claim.  The Court of Appeals affirmed the trial court's decision.  Even though the Court of Appeals had already rejected the merits of the son's challenges to the 1986 will, it also explained that the son actually lacked standing to contest the 1986 will *because he had not challenged the validity of the 1984 will that also disinherited him*.  973 S.W.2d at 222 (emphasis added).  Therefore, in concluding that the son lacked standing, the Court of Appeals in Keasler properly applied the limited rule that Cowan and Jennings announced.

Similarly, we do not view the Court of Appeals' decision in Jolley as applying such a broad rule.  The Court of Appeals noted that the decedent had disinherited each of the contestants in his 1998 and 1997 wills, yet the Court of Appeals actually ruled that the contestants lacked standing because they had received only a de minimis ten dollar cash bequest in the decedent's 1985, 1977, and 1975 wills, which was insufficient to confer standing to contest the subsequent wills disinheriting them.  154 S.W.3d at 543.  The Court of Appeals did not base its determination of no standing in Jolley on facially valid successive wills disinheriting the contestants.

[11]  This factual distinction was emphasized in at least one Court of Appeals' decision.  See In re Estate of Otte, No. 02A01-9402-PB-00023, 1995 WL 116013, at *2 (Tenn. Ct. App. Mar. 15, 1995) ("In Cowan, the [S]upreme [C]ourt held that the right of the petitioner therein, one of the next of kin of the deceased, to contest the validity of the will of the deceased was eliminated by the existence of an earlier *valid*, but unprobated, will; thus making him a stranger to the estate and as such, without any right to contest the will.  The rule adopted in Cowan was later affirmed in [Jennings]." (emphasis added)).

Furthermore, even if <u>Cowan</u> and <u>Jennings</u> were not limited by their distinct factual circumstances, we would not embrace such a broad, bright-line rule that would deprive litigants of any opportunity to litigate the validity of either will.  As the trial court here explained, such a rule would be harsh, unfair, inequitable and promote "the potential for fraud by simply creating two wills and [having] one insulate the other."  Not only does such a broad rule create a potential for fraud, it lacks a logical basis.  The Kansas Supreme Court succinctly described the logical pitfalls, stating:

> How an unprobated will could be said to be a valid will and used in litigation as a valid will to the prejudice of an heir *who has never had a chance to question its validity* calls for a subtlety of reasoning which we would not care to follow.

<u>Marr v. Barnes</u>, 267 P. 9, 10 (Kan. 1928) (emphases altered).  Indeed, although only a few courts in other jurisdictions have addressed this precise issue, the majority of courts to do so have rejected such a broad rule.  <u>See</u> <u>In re Robinson's Estate</u>, 27 Cal. Rptr. 441, 442 (Cal. Ct. App. 1963) (holding that heirs had a sufficient interest to qualify as contestants of the will which substantially diminished their rights to succeed as heirs, despite "a prior will, or a number of prior wills," which "might affect their rights to succeed as heirs to the same extent, or to a greater extent than did the will before the court"); <u>Stephens v. Brady</u>, 73 S.E.2d 182, 184 (Ga. 1952) ("The mere existence of a prior unprobated will could have no effect on the interest of the husband, as an heir, to [contest] the second will."); <u>In re Jack Wong Yuen & Lei Young Wong Yuen Revocable Living Tr. Dated April 22, 1996</u>, 312 P.3d 1240, 1244 (Haw. Ct. App. 2013) (declining to hold that persons disinherited by a prior testamentary instrument lack standing to contest a subsequent testamentary instrument because "an heir-at-law who successfully challenges a testamentary instrument has the possibility of taking via intestacy, depending on the outcome of this proceeding and further proceedings"); <u>In re Estate of Schlenker</u>, 808 N.E.2d 995, 999 (Ill. 2004) (stating that an heir is an "interested person" under an Illinois statute and, as such, has standing to contest a will even though the decedent executed prior wills disinheriting the heir); <u>Estate of Malcolm</u>, 602 N.E.2d 41, 43 (Ill. App. Ct. 1992) (holding that legatees under three wills of the decedent were "interested persons" for purposes of standing to contest the third will, even though they would receive the same amount under both the second and third wills because the legatees anticipated contesting the second will and could not contest the second will before the third will was invalidated); <u>Marr</u>, 267 P. at 10 (declining to deny standing to a person disinherited by successive wills); <u>Murphy's Ex'r v. Murphy</u>, 65 S.W.165, 166 (Ky. 1901) (stating that an "heir of the decedent ha[s] the right to contest the will which was probated, without reference to the provisions of any previous will, which might never be offered for probate, or, if so offered, might also be the subject of contest").  <u>But see</u> <u>In re Estate of Keener</u>, 521 N.E.2d 232, 234 (Ill. Ct. App. 1988) (holding that a

person disinherited by several consecutive wills was not an "interested person" for purposes of the will contest statute).

Thus, we conclude that, when properly distilled to the factual circumstances in which they arose, Cowan and Jennings establish only that, if the validity of a will disinheriting the person bringing the will contest has already been established either by admission or judicial determination, then the person lacks standing. Jennings, 403 S.W.2d at 290–91; Cowan, 96 S.W. at 970.[12] This rule clearly does not require dismissal of Contestants' will contest for lack of standing. None of Dr. Brock's wills have been judicially determined to be valid. Nor have the Contestants admitted or conceded the validity of any of Dr. Brock's wills. To the contrary, the Contestants have filed a notice of contest as to Dr. Brock's 2013 Will and have sought to amend the notice to contest all of the prior wills the Proponents produced after this will contest was filed. All but one of the Contestants would share in Dr. Brock's estate under at least one of the wills predating 2012, and all of the Contestants would receive a share of Dr. Brock's estate under the laws of intestacy. Thus, the Contestants have shown that they would be entitled to share in Dr. Brock's estate if no will existed and the 2013 Will were set aside. Nothing more is required to establish standing to pursue this will contest.

It is true, as the Proponents point out, that it will be no easy task for Contestants to mount a successful will contest on the 2013 and prior wills. But, as already noted, a litigant need not establish a likelihood of success on the merits to establish standing. Furthermore, although the Proponents are correct that expeditious and inexpensive administration of estates is a laudatory objective, "fraud should never be insulated from the reach of the court because the court may have more work to do to detect and correct the fraud." Estate of Malcolm, 602 N.E.2d at 44. Thus, on remand, and consistent with the purpose of a will contest, a determination will be made, once and for all, about how Dr. Brock's estate should be distributed. See In re Estate of Barnhill, 62 S.W.3d at 143; Jones, 187 S.W.2d at 791. Where, as here, the parties dispute which testamentary documents, if any, represent the decedent's last valid will and testament, the competing instruments must all be submitted for adjudication in the will contest. Bearman v. Camatsos, 385 S.W.2d 91, 95 (Tenn. 1964); Durell v. Martin, 110 S.W.2d 316, 318 (Tenn. 1937); Lillard v. Tolliver, 285 S.W. 576, 582 (Tenn. 1926); In re Estate of Boote, 198 S.W.3d at 714.

---

[12] See also Mitchell v. Redvers, No. MMXCV094010266S, 2009 WL 5511262, at *2–3 (Conn. Super. Ct. Dec. 17, 2009) (discussing Jennings and concluding that the plaintiffs lacked standing to contest a 2002 will because they had failed to challenge the execution and validity of a 1990 will disinheriting them).

## IV. Conclusion

For the reasons stated herein, the judgments of the trial court and Court of Appeals are reversed, and this matter is remanded to the trial court for further proceedings consistent with this decision. Costs of this appeal are taxed to Sammye M. Brock and W. Norman Smith, as co-executors of the Estate of J. Don Brock, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE